Sanborn et al. v. Nockin.

---

## JOHN B. SANBORN, *et al.*

### *vs.*

## CHARLES NOCKIN.

Certain correspondence between the parties in this case held to constitute a contract for sale of real estate sufficient to satisfy our Statute of Frauds, and to entitle the plaintiffs to apply for a specific performance.

*Held*, that such contract is not invalidated for want of U. S. revenue stamp, such stamp appearing to have been omitted through inadvertence or mistake, and without intent to defraud the government.

*Held*, that upon the facts appearing in the case plaintiffs were entitled to a decree of specific performance, and further that it was proper, in case defendant should be unable to procure his wife to execute the conveyance with him, to permit plaintiffs to take such title as defendant could give without her, and to allow compensation for such defect of title as would result from her refusal to execute the deed, in the form of damages to be assessed when, upon experiment, defendant should find himself thus disabled from a complete performance of his contract.

This action was brought in the court of common pleas, Ramsey county, to enforce the specific performance of an alleged contract for the sale of real estate, which was entered into by means of letters passing between the parties, the material portions of which are as follows:

Letter of April 27, 1872, from one of plaintiffs to defendant:
"I learn you are the owner of five acres of land in section

Sanborn et al. v. Nockin.

2, T. 28, R. 23. * * * If you desire to sell, I would like to learn your terms, and will make you an offer, if desired."

Letter of May 13, 1872, from defendant to plaintiffs:

"I would like to dispose of those five acres in question, provided I get a reasonable price. * * I am ignorant about the real value * * but as I paid myself 15 years ago more than $250 per acre, so under no circumstances I this day would take a lesser sum. Please make a liberal offer * * *."

Letter of May 15, 1872, from one of plaintiffs to defendant:

"I will give you $200 an acre, cash, for the land now, or I will agree with you to submit the matter of price to Mr. Kiefer, who is your friend, and I think a fair man, and will pay you what he says is right."

In a letter of May 17th, 1872, defendant acknowledges the receipt of plaintiff's letter of May 15th, and suggests coming to St Paul to arrange the matter.

Letter of May 23, 1872, from defendant to plaintiffs:

"The 5 acres of land for which you offer $200 per acre, is not for sale at such a figure. * * * I have written you in my first letter that under no circumstances I would dispose of the land for a lower price than I paid for it 15 years ago, $300 per acre, well knowing now that I paid too much for it then."

Letter of May 24th, 1872, from one of plaintiffs to defendant:

"I understand you to offer the land for three hundred dollars ($300) per acre, and to decline peremptorily to sell it for a less sum. I will buy the land at that sum, three hundred dollars per acre, cash on delivery of deed, provided the record title is perfect. You make out a warranty deed, and have your wife sign with you if you have a wife, and send the same to Kiefer to be delivered upon payment to him of fifteen hundred dollars. Have the deed made to John B. and Walter

Sanborn et al. v. Nockin.

H. Sanborn. As soon as Kiefer notifies us that he has the deed, we will get an abstract of the title, and pay him the money as soon as the abstract is examined and found correct."

Letter of May 27th, 1872, from defendant to plaintiffs :

" Your favor of May 24th inst. has been received and contents noticed. I take your offer as granted in so far that you must allow me at least 14 days' time in order to make title perfect, and get my wife to sign deed, if this is done, then the bargain is made. I have got an abstract of land deposited at Chicago, where my wife is at present on a visit, and within this week I shall go to the latter city in order to arrange the matter. I do not doubt of a good result ; shall let you know within a short time. If everything will be in order, I shall send abstract and papers to Messrs. Willius Bros. & Dunbar's banking house, St. Paul."

Letter of May 29, 1872, from plaintiffs to defendant :

" We close the bargain with you on the terms proposed, and grant you the fourteen (14) days from this date to perfect your title."

The plaintiffs claim that these letters constitute a valid contract for the sale of the west half of the east quarter of the northeast quarter of the northwest quarter of section two in township twenty-eight north, of range twenty-three, of which defendant was then the owner, and averring on their part a tender of the purchase price kept good, and a request that defendant execute the deed according to the contract, demand performance on the part of the defendant by the execution of a deed passing to them a perfect title of the premises in fee ; that in default of the execution of such deed the decree of the court stand in lieu thereof, and such other and further relief as to the court may seem meet.

The defendant claiming that these letters did not constitute a contract of sale, denied the making of any contract ;

admitted that he was the equitable owner of the land in question subject to the right of dower of his wife, but alleged that he had not a perfect legal title thereto.

On the trial the letters were introduced by plaintiffs, defendant objecting ; and it was admitted that on the first day of December, 1858, the title to the premises was in one Theodore Kraft, and a deed of that date from him conveying the same in fee to defendant, duly recorded on the 20th of the same month was put in evidence ; and there was no evidence introduced tending to show that defendant was the owner of any other land in said section. It was also admitted on the trial by defendant that a revenue stamp on the letters was omitted through inadvertence or mistake, and that there was no intention on the part of the plaintiffs to defraud the United States Government, or deprive the same of revenue thereby. And the plaintiffs offered in open court to affix the proper stamp, and the same was affixed, defendant objecting. Evidence was introduced on the part of the plaintiffs, which was undisputed, tending to show a tender of the purchase price ; that it was kept good ; that plaintiffs also tendered a proper deed, demanded its execution, and provided a notary to take the acknowledgments ; that defendant refused to execute the deed alleging that his wife would not sign it ; that plaintiff then demanded that defendant execute the deed without his wife joining, which was also refused. The defendant under objection introduced in evidence a quit-claim deed executed January 13, 1859, and recorded in Ramsey county the 2d day of February thereafter, from the defendant to one Lambert Erbotching for the west half quarter of the equal quarter part of the forty acre tract of land known and described as the northeast quarter of the northwest quarter of section 2, township twenty-eight north, of range twenty-seven, containing five acres more or less, lying and being in the

county of Ramsey, and state of Minnesota. The court, before which the case was tried without a jury, found the issues of fact for the plaintiffs—and as conclusions of law, that the plaintiffs are entitled to a specific performance of the alleged contract, so far as the defendant is able to perform the same, and if unable completely to perform, by reason of his wife's refusal to sign the deed, or otherwise, to damages arising from such failure to perform ; and directed that a decree be entered against defendant for such performance, and that the plaintiffs have leave hereafter to apply to the court on the question of damages. The defendant made a motion for a new trial, which was denied, and he appeals from the order denying the same to this court.

H. J. HORN and MITCHELL & YALE, for appellant, cited: *Cole v. Brown*, 10 *Paige*, 526 ; *Davis v. Shields*, 26 *Wend.* 339 ; *Chaplin & Jones v. Parish*, 11 *Paige*, 405; 3 *Parsons on Contracts*, 355 ; *Lanz v. McLaughlin*, 14 *Minn. pp.* 72, 73, 74, 75 *and authorities cited ; Wright v. Weeks*, 3 *Bosw.* 372 ; 25 *N. Y.* 153 ; *Roberts v. Grace*, 16 *Minn.* 126 ; *Browne on Frauds, sec.* 385 ; *Key v. Card*, 6 *B. Monroe*, 103 ; *Meadows v. Meadows*, 3 *McCord*, 458 ; *Ferguson v. Stover*, 33 *Penn. St.* 411 ; *Parkhurst v. Van Corland*, 1 *John. ch.* 273 ; *Bailey v. Ogden*, 3 *John.* 399 ; *Barrikman v. Hughendall*, 6 *Black.* 21 ; *Farwell v. Mather*, 10 *Allen*, 322 ; 13 *U. S. Statutes at large, pp.* 295, 298 ; 14 *do.* 143.

JOHN B. & W. H. SANBORN, for Respondents.

I. Letters connected by mutual reference form a sufficient memorandum of a contract for the sale of lands.

*Parsons on Contracts, vol.* 3, *page* 17; *note C.; Parsons on Contracts, vol.* 3, *page* 4, *note C.; Dobell vs. Hutchinson*, 3 *A. & E.* 355 ; *Tawney vs. Crother*, 3 *Bro. Ch.* 161, 318 ; *Saunderson vs.*

Sanborn et al. v. Nockin.

*Jackson*, 2 *B. & P.* 238 ; *Foster vs. Hale*, 3 *Ves.* 696 ; 5 *Vesey*, 308 ; *Toomer vs. Dawson, Cheves*, 68 ; *Ide vs. Stanton*, 15·*Vermont*, 685.    *And cases cited in notes to Parsons on Contracts, above cited.*

II. " The five acres of land owned by defendant in section 2, T. 28, R. 23," is a sufficient description when it does not appear that the defendant owned more than five acres in said section 2.    *Dygert vs. Pletts*, 25 *Wend.* 402 ; *Barry vs. Coombs*, 1 *Peters*, 652 ; *Ruckman vs. King*, 9 *Am. Law Reg.* 155 ; *Nichols vs. Johnson*, 10 *Conn.* 192 ; *Tallman vs. Franklin*, 14 *N. Y.* 587, 589 ; *Owen vs. Thomas*, 3 *Mylne & K.* 353 ; *Parsons on Contracts, vol. 3, page* 17, *note F.; Chadwick vs. Burnley Improvement Comr's*, (*Queen's Bench*,) 9 *Am. Law Reg. vol. 4, page* 309 ; *Prettyman vs. Walston*, 34 *Ill.* 175 ; *Bird vs. Bird*, 40 *Maine*, 398 ; *Abbott vs. Pike*, 33 *Maine*, 204 ; *Field vs. Huston*, 8 *Shep.* 69 ; *Jeffers vs. Radcliff*, 10 *N. H.* 242 ; *McChesney vs. Wainwright*, 5 *Ham.* 452 ; *Jackson vs. Delancy*, 11 *Johns.* 365.

III. A subscription by the vendor of one of several letters which together form a memorandum of a contract for the sale of lands, is a sufficient subscription under our Statute of Frauds.  *Gen'l Statutes, page* 334, *sec.* 12 ; *New York Revised Statutes, vol.* 2, *page* 139, *sec.* 7 ; *Newton vs. Bronson*, 13 *N. Y.* 587, 595 ; *Gale vs. Nixon and Nixon*, 6 *Cowen*, 444, 448 ; *Sugden on Vendors, ch.* 3, *sec.* 3 ; *Dobell vs. Hutchinson*, 3 *Adolph & E.* 355 ; *Jackson vs. Lowe*, 1 *Bing.* 377 ; *Toomer vs. Dawson, Cheves*, 68 ; *Parker vs. Parker*, 1 *Gray*, 409 ; *Tawney vs. Crother*, 3 *Bro. Ch.* 161, 318 ; *Saunderson vs. Jackson*, 2 *B. & P.* 238 ; *Welford vs. Beazely*, 3 *Atk.* 503.  *Parsons on Contracts, vol.* 3, *page* 4, *Note C.,* and other cases there cited.

IV. Where a vendor contracts to sell a tract of land with release of dower, and refuses to make a conveyance sufficient to give a perfect title, it is proper for the court to decree specific performance, as far as he can perform, with leave to

apply to the court for any damages that may result from failure of full performance. *Park vs. Johnson* 2 *Am. Law Reg.* 180; *Covell vs. Cole,* 16 *Mich.* 223 5–6 ; *Wright vs. Young,* 6 *Wisconsin,* 127 ; 2 *White & Tudors, Eq. Cases, part 2d, pp.* 24, 35 ; 16 *Vesey, Jr. (Sumner's edition,)* 390 ; 10 *Idem,* 292 ; 17 *Idem,* 394 ; 9 *Johns.* 450 ; 3 *Sanford's Ch'y,* 613 ; 1 *Hare, (Eng. Ch'y,)* 26 ; 3 *Beavan,* 123 ; *Adam's Eq. marginal, page* 91 ; 2 *Parsons on Contracts,* 540, 558 ; *Story's Eq. Jur.* 779 ; 8 *Blackford,* 146 ; 34 *Ala,* 633.

V. An unstamped instrument is admissible in evidence where it appears that there was no intention to defraud the government by the omission, and a stamp is affixed at the trial. *Hallack vs. Jaudin,* 34 *Cal.* 175 ; *Beebe vs. Hutton,* 47 *Barb.* 193 ; *Carpenter et al. vs. Snelling,* 97 *Mass.* 458 ; *Sporer vs. Eifer,* 10 *Am. Law Reg.* 206 ; *Cogger vs. Leming,* 10 *Am. Law Reg.* 133 ; *American Law Register, March,* 1872, *page* 137–143.

VI. When a vendor makes an offer of sale of property on certain terms and the vendee accepts the offer on those terms, and signifies that acceptance, a legal contract is made. *Mactier vs. Frith,* 6 *Wendell,* 103, 119 ; *Vassar vs. Camp,* 1 *Kernan,* 441 ; *Worrall vs. Munn,* 1 *Selden,* 246 ; *Trevor vs. Wood,* 36 *N. Y.* 309.

*By the Court.*—BERRY, J.—This action is brought to compel specific performance of defendant's alleged contract to convey a certain tract of land. The negotiations were conducted by letters which are sufficiently connected by reference to show that they all relate to the same transaction, and which may all therefore properly be considered for the purpose of determining what such transaction was. By their letter of May 24th, when read in connection with the preceding correspondence, plaintiffs offer to purchase the five acres of land owned by defendant in section two, township twenty-eight

Sanborn et al. v. Nockin.

range twenty-three, for three hundred dollars per acre, cash, on delivery of a warranty deed executed by defendant and wife, the deed to be sent to one Kiefer for delivery upon payment of fifteen hundred dollars, such payment to be made as soon as plaintiffs, upon being notified of the arrival of the deed, can procure and examine an abstract, if the title is found correct. To this offer defendant in his letter of May 27th, replies: " I take your offer as granted in so far that you must allow me at least 14 days' time in order to make title perfect and get my wife to sign deed, if this is done, then the bargain is made. I have got an abstract of land deposited at Chicago, where my wife is at present on a visit, and within this week I shall go to the latter city in order to arrange the matter. I do not doubt of a good result; shall let you know within a short time. If everything will be in order, I shall send abstract and papers to Messrs. Willius Bros. & Dunbar's banking house, St. Paul." To which plaintiffs, May 29th answer: " We close the bargain with you on the terms proposed, and grant you the fourteen days from this date to perfect your title."

The proper construction of defendant's letter of May 27th, is that he accepts plaintiffs' offer of the 24th, on condition that he is allowed not less than fourteen days' time in order to make title perfect, and get his wife to sign the deed. What defendant says further in his letter of the 27th is said by way of cursory remark, and speculation merely, not as affecting his acceptance, save as it modifies plaintiffs' offer in respect to the person to whom the deed is to be sent. The proposal thus contained in defendant's letter of the 27th is accepted by plaintiffs' letter of the 29th, and thereupon such proposal becomes a contract on defendant's part. By its reference to and connection with the previous correspondence it designates the vendees, and expresses the consid-

eration, together with the time and mode of payment. By like reference it designates the land as the five acres in section two, township twenty-eight, range twenty-three, owned by defendant. We have then a contract subscribed by the party by whom the sale is to be made, satisfying the requirements of our Statute of Frauds in section 12, chapter 41, General Statutes.

Whatever force there was in the objection that plaintiffs' letter of the 29th was destitute of a U. S. revenue stamp, was clearly overcome by the admission that such stamp was left off through inadvertence, or mistake, and without intent to defraud the government. *Cabott vs. Radford*, 17 *Minn*. 320, and cases cited.

The evidence in the case showed that defendant was the owner of five acres of land in section two aforesaid, being the same particularly described in the complaint, and that his title thereto was perfect of record, and there was no evidence tending to show that he was the owner of any other land in said section. This was certainly a sufficient ascertainment and identification of the land referred to in the contract. The quit-claim deed to Erbotching had upon its face no relation to the tract in controversy, and there was no evidence, nor offer to show that it was intended to convey or in any way to affect the same. Plaintiffs having shown tender kept good of the agreed purchase money, as well as of a proper deed ready for execution, and a demand that such deed be executed, a notary having been provided for the purpose of taking acknowledgment thereof, we can conceive of no reason why they were not entitled to a decree of specific performance, nor any reason why, in case defendant should be. unable to induce his wife to sign the deed, it was not entirely proper to allow plaintiffs to take such title as defendant could give without her, and allow compensation for such

defect of title as would result from her refusal to execute, in the form of damages, to be assessed when upon experiment the defendant should find himself thus disabled from a complete performance of his contract. *Drake vs. Barton*, 18 *Minn.* 462. The prayer of the complaint was broad enough to authorize such relief. It asked not only that defendant be compelled to convey ; that in case of his failure to convey a judgment be entered and recorded to stand in lieu of a conveyance, but "for such other and further relief as to this court may seem meet."

Order denying new trial affirmed.