| 28 | 53 |
| 32 | 680 |
| 28 | 53 |
| 38 | 684 |

ISAAC ADAMS, APPELLEE, v. EDWARD H. THOMPSON ET AL., APPELLANTS.

[FILED NOVEMBER 26, 1889.]

1. Real Estate: CONTRACT FOR SALE. The evidence, which consisted of correspondence between plaintiff and defendant, by letters and telegraphic dispatches, and which is set out in the opinion at length, *held*, to constitute a contract for the sale of real estate. MAXWELL, J., dissents.

2. ———: ———: DESCRIPTION. Defendant owned but one tract of

land in a subdivision of the city of O. This tract was referred
to in the correspondence which constituted the contract, but
without a definite description. This was *held* to be sufficient
to admit parol evidence as to description.

3. ———: ———: PRIOR EQUITIES: PURCHASE WITH NOTICE. The
defendant having purchased from the plaintiff's grantor with
full knowledge of the plaintiff's purchase and his rights there-
under, took subject to such purchase. MAXWELL, J., dissents.

APPEAL from the district court for Douglas county.
Heard below before WAKELEY, J.

*George B. Lake,* and *J. L. Kennedy,* for appellants:

To establish an agreement for sale sufficient to entitle one
to specific performance it must appear that there was a "clear
accession on both sides to one and the same set of terms."
(*Lanz v. McLaughlin,* 14 Minn., 72; *Hamlin v. Wistar,* 31
Minn., 418 [18 N. W. Rep., 145]; 2 Story, Eq. Jur., sec.
764.) A court of equity will not enforce performance
where there is a misunderstanding as to the terms of sale
(*Clay v. Ricketts,* 66 Ia., 362 [23 N. W. Rep., 755]); nor
where it even seems *probable* that the parties have not
agreed to the same thing. (*Burkhalter v. Jones,* 32 Kan., 5;
*Eggleston v. Wagner,* 46 Mich., 610 [10 N. W. Rep., 37].)
To entitle appellee to such relief his acceptance of Thomp-
son's proposition must have been absolute and unequivocal
(Pomeroy, Spec. Perf. of Contracts, sec. 63.) Thompson
had a right to stand on a strict acceptance of his offer. (*Saw-
yer v. Brosshart,* 67 Ia., 678 [25 N. W. Rep., 876].) A
sale to another is a sufficient notice of withdrawal. (Pom-
eroy, Spec. Perf. of Contracts, sec. 61, and cases cited.)
The description must be such that without contradiction
or addition it can be applied to the very property intended.
(*Ryan v. Davis,* 5 Montana, 505 [6 Pac. Rep., 339]; *Pier-
son v. Ballard,* 32 Minn., 263 [20 N. W. Rep., 193];
*Richards v. Snider,* 11 Oregon, 501 [3 Pac. Rep., 178];
*Tice v. Freeman,* 30 Minn., 389 [15 N. W. Rep., 674]).

*Isaac Adams, pro se:*

As to the sufficiency of the description: (cases cited by appellee on this point are referred to in opinion); in *Richards v. Snider,* cited by counsel for appellant, a demurrer for uncertainty in description was overruled. Their remaining cases are examples of descriptions which do not satisfy the statute of frauds. No time of performance having been agreed upon in the contract, the law merely requires performance or tender thereof within a reasonable time. (Brown, Statute of Frauds, sec. 384.) In equity an executory contract of sale is regarded as vesting title in the vendee. (Pomeroy, Spec. Perf. of Contracts, 314; Warvelle on Abstracts, pp. 288, 289.)

REESE, CH. J.

This was an action for the specific performance of a contract for the sale of real estate.

The suit was instituted in the district court of Douglas county by plaintiff Adams against defendant Thompson.

It was alleged in the petition that on the 13th day of November, 1886, the defendant Thompson was the owner in fee simple of the real estate described in the petition as lot number 12 of P. McShane's subdivision of the northeast quarter of the southeast quarter of section 30, township 15 north, range 13 east, and that at said time he made an agreement with plaintiff whereby said Thompson, in consideration of the sum of $1,000, sold and agreed to convey to plaintiff the above described real estate; the terms of the sale being $200 cash, $485 in a note bearing eight per cent interest, secured by a mortgage on the premises, and the remainder—$315—by assuming the payment of three certain notes made by the said Thompson in favor of John A. McShane for $105 each, said notes being secured by a mortgage on the premises purchased; that in accordance with the terms of the agreement plaintiff was

to deposit said cash payment, together with the said note of
$485 and the mortgage securing the same, in one of the
banks of the city of Yankton, Dakota Territory, and upon
which deposit being made defendant was to execute and
deliver to said bank a deed to plaintiff for the premises
in dispute. It was alleged that plaintiff had fully per-
formed the terms and conditions of the contract on his
part, but that defendant had refused to make the convey-
ance, and a decree for the specific performance of the con-
tract was prayed.

Some time after the commencement of the action James
E. Riley appeared and made application to be made a
party defendant, alleging that he was the owner by con-
veyance of the real estate from plaintiff and that a deter-
mination of the controversy could not be had without
his presence in court. Leave having been granted, he filed
his answer alleging substantially the above facts. Subse-
quent to this plaintiff asked and obtained leave to file his
supplemental petition, in which he alleged that after the
commencement of the action Horace B. Irey and William
B. Shriver claimed to have acquired some interest in the
real estate from defendant Thompson, subsequent to the
filing of the petition, but alleging that they had purchased
with full notice of plaintiff's right, and that as against him
whatever title they had to the real estate was invalid and
asking that they be decreed to convey the property to him.

Irey and Shriver having been made parties, appeared and
filed their answers to the petition and supplemental petition
of plaintiff, denying the principal allegations therein, and al-
leging that they had purchased the real estate from Thomp-
son prior to the pretended contract which plaintiff claimed
had been made by him and without notice of any of his al-
leged rights ; that they had paid the full consideration there-
for and received a conveyance, and were the holders of the
title in fee simple, and that Irey had subsequently sold and
conveyed the property to Shriver. In addition to the de-

nial of any contract between plaintiff and defendant Thompson it was alleged that plaintiff had not complied with the terms of the offer made to him by Thompson, and that he had no right to demand the relief prayed for in his petition. Further, that whatever alleged contract was made between them was not in writing and therefore was within the statute of frauds and could not be enforced. The prayer of the answer and cross-bill was that the plaintiff and Riley be decreed to have no right in the real estate, that they be required to execute the proper conveyance to defendants, and that the conveyance from Thompson to Adams, and from Adams to Riley, be set aside and canceled upon the deed records for the county.

A trial was had to the district court, which resulted in findings of fact in favor of plaintiff. These findings were as follows:

" 1. That the correspondence between plaintiff and defendant Thompson constituted a binding contract between them.

" 2. That said correspondence sufficiently described the land in question to admit parol evidence to identify it.

" 3. That there was a sufficient offer by plaintiff to perform the terms of the contract.

" 4. That as against defendant Thompson, plaintiff was entitled to a specific performance of the contract.

" 5. That, as the clerk of Shriver, Irey was incapacitated to enter into a contract with Thompson which would be binding upon Thompson while the latter was not aware of the relations existing between Irey and Shriver.

" 6. That plaintiff, as equitable vendee of Thompson, had the right to rescind the conveyance to Irey.

" 7. That since both Irey and Shriver had notice of the claims of plaintiff at the time of the conveyance to Irey, the burden rested upon Irey to prove affirmatively that he entered into a valid agreement for said conveyance without notice of plaintiff's equities.

" 8. That plaintiff has a sufficient interest in the controversy to maintain the action, notwithstanding his . conveyance to defendant Riley.

" 9. And finds generally for the plaintiff upon the issues.

" To each of which findings the defendants severally except."

A decree was rendered in favor of plaintiff, and from which defendants appeal. .

As appears from the findings above quoted, the contract entered into between Adams and Thompson was wholly by correspondence, as also the alleged contract entered into between Thompson and the defendants.    The correspondence between plaintiff and Thompson began on the 26th day of October, 1885, when plaintiff sent Thompson the following letter :

"OMAHA, NEB., Oct. 26, 1885.

"E. H. Thompson, Esq., Yankton, D. T.: DEAR SIR— Mr. Pollock, signal service office, informs me that you own lot in McShane's sub.    Do you wish to dispose of your contract upon reasonable terms?

"Very truly,        ISAAC ADAMS."

To this Thompson sent the following reply:

"YANKTON, D. T., Oct. 28, 1885.

"Isaac Adams, Esq.:    DEAR SIR—Yours of the 26th at hand.    I would not care to dispose of the five a. McShane sub. unless I received at least $175 per acre.    If you should want live on the land, or have some other honest man to do the same, I will let him use it, and the $42 worth of lumber on it, several years, for breaking it.

"Yours truly,        E. H. THOMPSON."

On the 6th of November Thompson again wrote Adams as follows :

"Isaac Adams, Esq.: DEAR SIR—I have been advised not to sell the five acres, and as your cash payment is so very small that I wouldn't know what to do with it, I

think we better postpone the matter for the present. I will promise you, however, that when I wish to sell, I will give you the first chance. I have just received another letter from parties who want to purchase. If you know of anyone who would like to buy the lumber, or live on the land, I will give them a good chance.

"Yours truly,      E. H. Thompson.

"P. S.—I told the other parties that I wouldn't sell for less than $200 per acre. So if either of you would like to purchase at that figure, I would feel disposed to sell. The land was fenced, $42 worth of lumber on it, and it is the best lot, richest soil, and creek. I was told it was worth $175 per acre, about eighteen months ago, by a real estate agent."

The next letter appearing in the record is as follows:

"Yankton, D. T., November 11th, 1885.

"*Isaac Adams, Esq.:* Dear Sir—Yours of the 7th is at hand. I will take $1,000 for the five acres, $200 cash, and the remainder, $500 in one year at 8 per cent, subject, of course, to the mortgage of $300 and interest, payable to John McShane, all expenses attending the sale to be paid by purchaser.

"Yours truly,      E. H. Thompson.

"P. S.—I would like to know if you will take the lumber at $25, payable in a year."

In reply to this Adams sent Thompson the following telegraphic dispatch:

"11–13, 1885.

"*To E. H. Thompson, Yankton, D. T.:* Will take the five acres upon terms stated.      Isaac Adams."

Thompson then wrote Adams the following letter:

"Yankton, D. T., Nov. 13, 1885.

"*Isaac Adams, Esq.:* Dear Sir—Your telegram is at hand. You can make out the papers and send them with

your cash payment to one of the banking houses here, the latter to be paid to me when the papers are in their hands properly signed for you. I inclose the names of three bankers here. You know the terms, $1,000, $200 cash, etc.        Yours truly,        E. H. THOMPSON."

On the 14th of November Adams wrote Thompson as follows:

"*Edward H. Thompson:* DEAR SIR—I telegraphed you yesterday accepting your terms as stated in your letter of the 11th instant, and to-day I have inclosed to the First National Bank of Yankton a certified check for $196.75, mortgage for $485, note for same am't due in one year at 8 per cent, and deed made out ready for your signature. Upon executing and acknowledging the deed the bank will deliver you check, note, & mtg. The mtg. due McShane, which I assume, calls for $315, hence the other only $485 instead of $500, and the taxes for 1885 are due, $3.25, which amount I have reserved for the purpose of paying them.

"In filling up the deed I presumed that you were single. If I err you will have to make another. The lumber I have no use for whatever, but if you desire will try and get some one to make you an offer for it. Assuming that you have made a good trade, and that I have assumed some risk of not getting out of it what I paid, I am,

        "Very truly,        ISAAC ADAMS.

"P. S.—Please forward deed as early as convenient and oblige.        I. A."

Thompson then wrote Adams as follows:

        "YANKTON, D. T., Nov. 16, 1885.

"*Isaac Adams, Esq.:* DEAR SIR—I suppose the deed, etc., are at the bank, but I haven't been there yet. The taxes are not due on lot 12 until next spring, according to the statement of Mr. John Rush. Please inquire into the matter. This may be a good sale, but I think it is very

doubtful.    I don't understand why the int. on $300 for 3 mo. at 6% is $15.    Please explain.

"Yours, etc.,      E. H. Thompson."

This was followed by the following letter from Thompson :

. "Yankton, D. T., Nov. 17, 1885.

"*Isaac Adams, Esq.:* Dear Sir—Your note does not bear interest, the pres. of the bank informs me.    I suggest that you send a new note for $500, bearing int. at 8%. The amount you have deducted for taxes, not due until May, will just about pay the interest due McShane at this time.    There was a deed here from an Omaha man already for me to sign when your papers arrived, but I was willing to give you the preference because you wrote first and agreed to the terms first.       Yours truly,

" E. H. Thompson."

To this Adams made the following reply :

"Omaha, Neb., Nov. 18, 1885.

" *Mr. E. H. Thompson:* Dear Sir— Replying to yours of the 16th, I enclose you your tax receipt, together with a statement from Mr. Rush respecting the taxes.    Your error in mistaking delinquent for due is not an unnatural one, but I do not suppose that you intended to convey the property subject to a tax lien, when in the terms of sale you gave me you said nothing about the assumption of taxes.    The original mtg. given by you Aug. 15, '83, is to secure 5 promissory notes of $105 each, bearing interest at 6% per annum, payable semi-annually.    There is now due three of those notes with interest since August 5 last.    The terms which I accepted are in the following language, taken from your letter of the 11th inst. : 'I will take $1,000 for the 5 acres, $200 cash and remainder, $500 in one year at 8%, subject of course to the mortgage of $300 and interest, payable to John McShane, all expenses attending the sale to be paid by purchaser.'    The interest referred to is

that due since last Aug. on the above notes of $315, I take it, for there is nothing else in the way of interest to assume. This interest is $4.72, making $1,004.72 I have paid for the lot in manner as follows :

| | | |
|---|---:|---:|
| Certified check | $196 | 75 |
| Cash for taxes | 3 | 25 |
| Total cash | $200 | 00 |
| One mtg. for | 485 | 00 |
| One mtg. for | 315 | 00 |
| Int. on latter | 4 | 72 |
| | $1004 | 72 |

"I learned yesterday, in a casual conversation with Mr. Shriver, who owns 10 acres this sub., that he had sent some papers for this lot, but, as you are doubtless aware, it belonged to me from the date of my telegram accepting your terms.

"I trust the above explanation will be satisfactory to you, and that you will forward my deed without further delay.          Very truly,          ISAAC ADAMS."

This was again followed by a letter from Adams :

"OMAHA, NEB., Nov. 19, 1885.

"*Mr. E. H. Thompson:* DEAR SIR—I have forwarded to the First National Bank a new note for $485, bearing 8% interest, as I intended to make the other and corresponding with mtg. I sent you.

"I also send you a statement from McShane as to the amount of the mortgage I have assumed. I have sold the land subject to these two mortgages, aggregating $800. I want my deed by return mail. Do not fail to have it signed by your wife.

"If you still insist upon my paying you $15 more than your contract calls for, merely because Shriver offered you this amount after you had sold the land to me, I shall send it to you upon the receipt of my deed. If you think,

however, that I have complied with our agreement I shall expect you to return the note for $15, which I herewith enclose.      Very respectfully,      ISAAC ADAMS."

On the 21st of November Thompson wrote Adams as follows:

"YANKTON, D. T., November 21, 1885.

"*Isaac Adams:* DEAR SIR—Yours of the 19th is at hand, with two enclosures.   My wife requests me to say to you that she refuses to sign the deed, as we are offered $70 for the lumber provided Mr. Shriver gets the land.   She don't care to have me sell it at all because she regards it as a good investment.   Mr. Shriver claims that he had his papers here first, which is a fact.   He has spent three times as much money telegraphing as you have.   Shriver don't know that you are bidding against him, or at least I haven't told him, but if you think proper you can see him and ascertain which of you will pay more for the property. If you decide that you can't pay more, I will have all your papers promptly returned, including your note of $15.      "Yours truly,      E. H. THOMPSON."

On the 23d of November this suit was instituted.

Thompson having deeded the property to Shriver and Irey and Adams having executed a deed to Riley, the contest is, in reality, between Riley, through Adams, and Shriver and Irey.   As we view the case it seems to us that the controlling questions are: First, Does the correspondence between Adams and Thompson constitute a written contract between them for the sale of the property from Thompson to Adams? and second, If so, has Adams complied with the provisions of the contract on his part sufficiently to entitle him to a conveyance?   If not, he is not entitled to decree for specific performance, and the land having been conveyed from Thompson to Shriver and Irey, their title must be held good with a decree canceling the deed from Adams to Riley.

By the letter from Thompson to Adams, bearing date November 11, 1885, the proposition was made to Adams to sell him the property in dispute for the sum of $1,000. The tract consisted of five acres. In his letter of October 28 Thompson stated that he would not care to sell for less than $175 per acre, and in the postscript to the letter of November 6 he said that he would not sell for less than $200 per acre, but that if that figure were offered he would be disposed to sell. Evidently with this in view he wrote the letter of November 11, 1885, fixing his price, which was $1,000 for the five acres, or $200 per acre. His terms for the payment of the $1,000 were stated to be $200 cash, $500 in one year, and the assumption of the $300 debt and mortgage due McShane. Nothing was said as to the character of the conveyance to be made, but the whole case shows that the execution of a warranty deed was contemplated. From this we conclude that it was his purpose to deduct the McShane mortgage from the purchase price, free the land from tax liens, and receive a part of the remainder in money and the balance in one year. This offer was unequivocally accepted by plaintiff in his dispatch of the 13th of November. But upon investigation it turned out that the mortgage debt to McShane was $315 (three notes of $105 each) instead of $300, as supposed by Thompson. This $315 was to be assumed by Adams and hence should be deducted from the agreed price. It also appears that there were unpaid taxes of $3.25, which, though not delinquent, were a lien on the land. This, under the proposition contained in the letter of November 11, Thompson would have to pay. The taxes were properly deducted from the cash payment by Adams and the amount due upon the McShane mortgage over and above the $300 from the $500 payment due in one year; and therefore the remittance of money, note, and mortgage by Adams was in strict compliance with the terms of Thompson's offer. But the deduction of $3.25 from the cash payment seems

not to have been objected to by Thompson, for in his letter of November 17 he says, "the amount you have deducted for taxes not due until May will just about pay the interest due McShane at this time," and closes the letter by saying that he would let plaintiff have the land because he "wrote first and agreed to the terms." The first note for $485, forwarded by Adams, did not contain a provision for the payment of eight per cent interest, but this was corrected by a new note sent by plaintiff in his letter of November 19th, and in which he also inclosed his note for $15, which was so much more than he had agreed to pay. We are fully convinced that the correspondence constituted a contract for the sale of the real estate and that plaintiff complied with it on his part to the fullest extent.

But it is contended by appellant that there is no such description of the real estate in the correspondence as would entitle the purchaser to a decree for specific performance. The first letter from plaintiff to defendant refers to his (defendant's) lots in McShane's sub. (meaning subdivision). In the answer from defendant he refers to the five acre lot in the same subdivision. The same occurs in defendant's letters of November 6th and November 11th, and throughout the whole of the correspondence there is no question as to the identity of the property. Defendant had no other property in the subdivision referred to, and the correspondence was with reference to that owned by him. This was sufficient to admit parol evidence as to the description. (*Atwood v. Cobb*, 16 Pick. [Mass.], 227; *Hurley v. Brown*, 98 Mass., 545; *Nichols v. Johnson*, 10 Conn., 192; *Ogilvie v. Faljambe*, 3 Mer. [Eng.], 53; *Sanborn v. Nockin*, 20 Minn., 178.)

The next contention of appellants Shriver and Irey is that they had purchased the property from Thompson prior to the alleged purchase made by plaintiff, and that as between them and plaintiff their equities were superior to those of plaintiff, and that he is not, as against them, en-

5

titled to the decree of specific performance and cancellation of their deed.

It appears by the record that on the 5th day of November, 1885, Shriver wrote the following letter to defendant Thompson :

"OMAHA, NEB., Nov. 5, 1885.

"*E. H. Thompson, Esq., Yankton, Dak.:* DEAR SIR— What will you take for your five, acres in McShane's subdivision? Have a chance to sell it. Answer on receipt of this and oblige,        Yours truly,

"W. G. SHRIVER."

We are unable to find any answer to this letter, but on the 11th of the same month Thompson sent the following to Shriver:

·"YANKTON, D. T., Nov. 11, 1885.

"*W. G. Shriver, Esq.:* DEAR SIR—Yours of the 9th is at hand. I will take $1,000 net for the lot, viz., $200 cash, and remainder—$500—in 1 year at 8 per cent, subject of course to the mortgage of $300 and interest due John McShane. Your commission and other expenses attending sale to be paid by purchaser. Should I feel as I do now, a portion, say ½ or ⅓ of the $500, could stand longer than 1 year, though I make no absolute promise, as I might need the money very much. The party you have in view can feel surer of getting the lot if he takes the lumber, as I am in receipt of a letter asking me to state my terms, on a proposition of $200 per acre. The party who sold for $800 made a mistake.

"Yours truly,        E. H. THOMPSON.

On the 12th of November, Shriver executed to Irey the following receipt:

"OMAHA, NEB., Nov. 12th, 1885.·

"Received of H. B. Irey fifty (50) dollars, on account of purchase of lot 12 in John A. McShane's subdivision of the N. E. ¼ of the S. E. ¼ of sec. 30, township 15, range

13 east, sold him this day for $1,000; $200 cash, $500 in 1 year, and subject to a certain mortgage of $300, favor of John A. McShane, also interest and '85 taxes.

"W. G. SHRIVER, *Agt.*"

On the same day he wrote Thompson the following letter:

"OMAHA, NEB., Nov. 12, 1885.

"*E. H. Thompson, Esq.:* DEAR FRIEND—Yours of the 11th inst. at hand. My man will take your five acres at your proposition—$200 cash, $500 in 1 year, subject to McShane $300 mtg.—at $1,000. I could not get any commission out of him, and if you will allow my small commission out of a $1,000 it will be very acceptable. I will enclose deed, which you will find out, giving your full name and wife, if any, and go before a notary public and have properly acknowledged, and send to me, on receipt of which I will remit you first payment.

"Will have mtg. properly executed, bearing interest at 8% on $500 for one year. The party is out of town, but left instructions and money with me. Don't think we will have any trouble with him about the lumber. If so, can sell to some one else, as there is one or two parties out in that neighborhood who will build this winter, and can sell it to them, as they will have to have lumber. Your 5 acres is well sold. Don't you want to buy something else with your money in O.? Return deed at once, and oblige,

"Y. T.,          W. G. SHRIVER."

On the 16th of November, and after the receipt by him of plaintiff's dispatch, and by the Yankton bank of the check, note, and mortgage, sent it by plaintiff, he wrote and sent Shriver the following:

"YANKTON, D. T., Nov. 16, 1885.

"*W. G. Shriver, Esq.:* DEAR SIR—When your papers arrived the property was considered sold, as I received a telegram from a party informing me he would take the lot

on the terms stated. He has check, deed, &c., here at bank, which I refuse to fill up unless 'he makes some alterations. If you can do anything about that lumber I would like you to do so as soon as possible, as I will have to move it from the land if I complete the papers that are here.

"Yours truly,  E. H. THOMPSON."

On the 19th Shriver sent a telegraphic dispatch to Thompson, the substance of which was: "My man will take lumber at $70 if he gets land. My sale was first. Ans. by wire;" and to which Thompson answered by the following telegram:

"YANKTON, D. T., 19.

"W. G. Shriver, Frenzer Block: Accepted, provided seventy dollars for lumber, cash payment, and necessary papers are sent immediately to First National Bank, Yankton, and paid me when papers are completed.

"E. H. THOMPSON."

This was answered by the following dispatch from Shriver of the same date:

"Terms satisfactory; will send money and papers next mail."

The deed from Thompson to Irey was executed and acknowledged on the 24th of. the same month and on the same day Irey and wife conveyed to Shriver, and also upon the same day Shriver and Sallie E. Irey, by H. B. Irey, her agent, entered into an agreement in writing whereby Shriver agreed to sell to Mrs. Irey the undivided half of said property for the sum of $537; $130 of which was paid in cash, the remainder to be paid by the assumption of one-half of certain mortgage liens on the land, amounting to $815, Shriver to make the deed to Irey as soon as the property was platted into city lots. By reference to the telegram from plaintiff to Thompson of November 13th and Thompson's letter of the same date in reply, and by which the contract of sale was agreed to in all particulars,

it is very evident that plaintiff was first in time and therefore first in right; for it could not be successfully contended that any contract was made between Thompson and Irey—or Shriver—prior to the 19th, when the telegraphic dispatches above copied passed between them, and at that time Shriver had full notice—received by Thompson's letter of the 16th—of plaintiff's right.

There other questions presented by appellee, but they need not be noticed. The decree of the district court was right and is affirmed.

DECREE AFFIRMED.

COBB, J., concurs.

MAXWELL, J., dissenting.

I am unable to concur in the opinion of the majority of the court, and as in my view a judge dissenting should give the reasons therefor, I will briefly state why I cannot acquiesce in the decision.

It will be seen from the statement of facts in the opinion of Chief Justice REESE that the proposition of Thompson to Adams was that the purchaser should assume the McShane mortgage—not $300 of that mortgage—and should pay him (Thompson) $200 cash, and $500 in one year. Mr. Adams in a general way *said* that he accepted these terms, but he has never yet offered to comply therewith. We find him sending a mortgage for $485 due in one year, without interest. When this was refused he sent a mortgage for $485, which was to draw interest, and an independent unsecured note for $15. If it was necessary to secure the note for $485, it would seem to be equally so to secure the $15. In any event it was not a compliance with the proposition and this court cannot say that it is, because it is not so in fact. Suppose Mr. Adams had sent a note for $499, would any court say the remainder was but a trifle, and that is a substantial compliance with the contract? There may be cases where equities have at-

tached in which the failure to tender a small sum like one dollar, or even fifteen dollars, would not defeat the plaintiff's rights, but the facts must be different from those in the case at bar. Here the plaintiff stands upon the naked contract and claims that he has fully tendered performance of the conditions. The record shows conclusively that he has not and that he is not entitled to recover.