OTIS K. HOLLIDAY V. WILLIAM A. MCWILLIAMS.

FILED APRIL 5, 1906. No. 14,202.

1. Lands: SALE: CONTRACT: EVIDENCE. The written contract required by section 74, ch. 73, Comp. St. 1905, may be evidenced by letters passing between the parties.

2. ———: DESCRIPTION. Where such letters contain data from which a description of the land placed with an agent for sale or barter can be ascertained with certainty, the contract may be enforced.

ERROR to the district court for Harlan county: ED L. ADAMS, JUDGE. *Reversed.*

*John Everson,* for plaintiff in error.

*R. L. Keester, contra.*

DUFFIE, C.

The petition upon which the plaintiff seeks to recover states that in December, 1903, the defendant was the owner of a farm of about 520 acres in Platte county, Nebraska, and orally represented to plaintiff that he desired to trade said farm for town property or a stock of goods; that if plaintiff would find for him a trader for said land at prices, terms and conditions to be fixed by the defendant, and with whom defendant would consummate a suitable

exchange, he would pay the plaintiff the sum of $300 as a compensation; that the promise was afterwards renewed and confirmed by letters and correspondence passing between plaintiff and defendant, copies of which are attached to the petition. It is alleged that plaintiff found a trade which was suitable and satisfactory to the defendant and that defendant consummated a trade in February, 1904; that deeds were exchanged between defendant and the party furnished by plaintiff, and the exchange of properties fully consummated on February 10, 1904. Judgment is asked for $300 and 7 per cent. interest from February 10, 1904.

The letters attached as exhibits are, first, one from plaintiff to defendant dated January 9, 1904, in the following words: "W. A. McWilliams, Munroe, Neb. Dear Sir: When we were at Burwell you wanted me to look you up a trade in our town for your farm and I spoke of J. Egleson having a stock of hardware and three storerooms combined that he might trade. I spoke to Mr. Egleson about it and he talked favorable and wanted your address to write to you, so when he writes give him what information you can and invite him to see what you have and I believe we can make a trade with him. Let me hear from you when you get word from him and I will see if I can't get him to go and see what you have. If his letter is favorable you might send me those photographs of the farm and I could show him what the farm looks like. Yours truly, O. K. Holliday."

McWilliams' reply to this letter was written from Monroe, Platte county, Nebraska, under date of January 23, 1904. After excusing delay, he urges Holliday to get his man to go and see the farm, describes the farm as being all fenced and cross-fenced, 200 acres under cultivation, 160 acres in hay, mostly alfalfa, balance pasture. He then adds: "I will give him a trade and put in my land at $50 per acre. We have a mortgage on it that amounts to about its cash value. There is 517.70 acres according to government patent. This mortgage can be

renewed easily. The farm will carry it easily. The accretions from the river, mostly covered with grass, make the farm about 530 acres. We want pay for what the patent calls for although we have a deed for all. Do your best and do it quickly. Have him come up at once to see the farm and if he likes it, will go back with him and trade with him if I find his property fairly near what he says it is, but he must see my farm first and see if he wants it or not, as I mean just what I say and will trade as I said above. Respectfully, W. A. McWilliams. The land is only three miles from the county seat."

Under date of January 26, 1904, the plaintiff replied to this letter, saying that he thought that Mr. Egleson, his customer, would visit the land in two or three days. He further states that he understood from the talk he had with McWilliams that the land was close to Columbus and that some hotel there had better be named where Egleson could meet McWilliams. He also suggests that McWilliams write to Egleson, telling him where he would meet him, and to have Egleson write a day ahead.

In reply to this letter McWilliams wrote the following: "Monroe, Platte county, Nebraska. O. K. Holliday, Alma, Nebraska. Dear Sir: Please observe closely what I write. I have just received a letter from Mr. F. E. Herron. He is asking me to pay him a regular commission. Now I cannot afford to allow him to come in for a commission for I cannot afford to take any less. So if you can handle Mr. Egleson and get him away from Herron and get Egleson and bring him up and stop at Clothier Hotel in Columbus, wire me at Monroe at least a half day in advance when you will be there and I will meet you there, take you to see the land and bring you to Monroe where we will draw up the particulars. You urge me to go back with you and I will go and if his property is fairly near what he says it is I will then and there close the deal with him. If you cannot, then notify me by return mail and if you will take $100 for your share I will give Herron the other

$200 for him to bring him. Let me know without the least delay. Land is selling quite often here for $75 per acre. The land I am offering is all black sandy loam soil. The only thing that can be said is that the farm was farmed by a man who was not able to farm it last year and of course he could not mow the farm along the roads and lanes as he should. When you get him to Monroe take him to the bank of Monroe and ask Mr. W. Webster about the land."

In reply Holliday wrote under date of January 30, the material parts of the letter being as follows: "Now you please to pay close attention to what I say and that is this: I don't divide my commission with Mr. Herron or anyone else. Mr. Herron is to get his pay from Mr. Egleson as he told me he intended to pay him if the deal was made." The letter further states that the writer had seen Egleson and that he thought Egleson would visit the land the next day.

Replying to this McWilliams wrote as follows: "I will say in reply to your letter just received, that I will not pay any commission to anyone unless they are able to get their man and keep them until the deal is closed and they must help to close it. So if you are working Mr. H. J. Egleson for me in this deal you must keep at him and keep him in your hands and you must stay with him and close the deal. I am not offering and do not need anyone to work me in this deal or any other. So if you have your man put him up and if you are the means of making the trade I will pay what we agreed upon. If you are not the means of getting the trade with me I will pay you nothing. You must earn your money if you want it. In other words, you must work the deal through to a finish or you have not earned your money."

A demurrer was interposed to the petition, which was sustained by the court, and, the plaintiff electing to stand on his petition, judgment was entered dismissing his case and he has brought the record here for review. Defendant, in support of his demurrer, relies on section 74, ch.

73, Comp. St. 1905, as follows: "Every contract for the sale of lands, between the owner thereof, and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent, and such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent."

In *Bradley v. Bower,* 5 Neb. (Unof.) 542, it was held that a contract sufficient to meet the requirements of the statute above quoted may be created by letters between the parties, and may be sufficient though the same papers are not signed by both. We are inclined to believe that the letters above quoted from are sufficient to show a contract of agency and the amount of the commission agreed upon. It is true that McWilliams does not, in express terms, say that he will pay Holliday $300 for finding the party with whom he may trade the land, but in one of the letters he does say that, if Holliday will take $100 for his share, he will give the other $200 to Herron if Herron can secure Egleson as a customer—a statement in the nature of an admission that $300 was the commission agreed upon—and in his last letter he makes a distinct and express agreement to pay the commission if Holliday is the means of securing a trade. The only objection that can reasonably be made to the contract evidenced by these letters is the failure to specifically describe the land, and this, we believe, under the holding of many courts in cases involving the same principle, is not fatal to the plaintiff's case. In actions brought for the specific performance of contracts to convey real estate, the land must be described in the contract with such clearness and accuracy that it can be identified and its boundaries determined beyond the possibility of future controversy; and yet there are many cases in which no specific description of the land has been given, where it has been referred to in general terms, in which it has been held that the action could be maintained. The rule

undoubtedly is that that is definite and certain which can be made certain by parol proof which does not contradict what appears in writing. As stated in *Gerrish v. Towne,* 3 Gray (Mass.) 82:

"Where general terms only are used to designate the subject matter of the agreement or conveyance, or the description is of a nature to call for evidence to ascertain the relative situation, nature and qualities of the estate, then parol evidence is not only admissible, but is absolutely essential to ascertain the true meaning of the instrument, and to determine its proper application with reference to extrinsic circumstances and objects. In such cases parol evidence is not used to vary, contradict or control the written contract of the parties, but to apply it to the subject matter, and thereby to render certain what would otherwise be doubtful and indefinite." To the same effect is the holding of our own court in *Ballou v. Sherwood,* 32 Neb. 666, and *Adams v. Thompson,* 28 Neb. 53; *Ruzicka v. Hotovy,* 72 Neb. 589.

It clearly appears from the letters above quoted from that photographs of the buildings had been taken and that the letters were written in view of these photographs. The farm is described as located three miles from the county seat (Columbus), as fenced and cross-fenced, 200 acres under cultivation, 160 acres in hay, mostly alfalfa, and the balance in pasture; that there are 517.70 acres according to government patent, and that by accretions from the river there are really 530 acres. From this data and from the county records, it seems quite clear that the land could be fully identified and a specific description ascertained.

We conclude, therefore, that the court erred in sustaining the demurrer to the plaintiff's petition, and recommend that the judgment be reversed and the cause remanded, with leave to the defendant to answer if he be so advised.

ALBERT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with leave to the defendant to answer if he be so advised.

REVERSED.