BELLEVUE COLLEGE, APPELLEE, V. GREATER OMAHA
REALTY COMPANY, APPELLANT.
348 N.W.2d 837

Filed May 4, 1984. No. 83-319.

Kenneth D. Gaskins and James L. Koley of McGill, Koley, Parsonage & Lanphier, P.C., for appellant.

Dean J. Jungers of Hascall, Jungers & Garvey, for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

KRIVOSHA, C.J.

The appellant, Greater Omaha Realty Company (Greater Omaha), a Nebraska partnership with its principal place of business in Omaha, Douglas County, Nebraska, appeals from a judgment entered by the district court for Sarpy County, Nebraska, directing Greater Omaha to convey to the appellee,

Bellevue College, a certain 2-acre tract of land owned by Greater Omaha, as well as to pay Bellevue College damages for failing to deliver fill dirt. We affirm.

The record discloses that Greater Omaha owned a 58-acre farm in Bellevue, Nebraska. The land was bordered by Bellevue College on the east, U.S. Highway 73-75 on the west, and by a residential development on the south. In early 1970 Herman Cohen, one of the partners of Greater Omaha, unsuccessfully attempted to rezone the tract for a Woolco shopping center development. The proposal received heavy opposition from the adjacent area residents. On August 11, 1977, Cohen, again seeking to obtain the platting and rezoning of the land in question, filed a request on behalf of Greater Omaha with the Bellevue Planning Commission. Two preliminary hearings were held by the Bellevue Planning Commission on the proposal, one on September 8, 1977, and the other on November 10, 1977. After the application was filed Doyle Wineland, a design engineer who had been hired by Cohen to do the engineering and design work for the project, advised Cohen that it would be helpful if Cohen could obtain the support of Bellevue College for the application. As a result thereof, Cohen sought the support of Bellevue College, and on November 10, 1977, a letter agreement was signed by Cohen, presumably on behalf of Greater Omaha, and Richard D. Winchell, president of Bellevue College. . The agreement, in essence, provided that Bellevue College would join with Greater Omaha in the request for platting and rezoning on the condition that Greater Omaha would convey certain land to Bellevue College and would provide Bellevue College with "a minimum of 150,000 cubic yards of dirt and a maximum of 250,000 cubic yards of dirt" to be used by the college to elevate the college property as a means of preventing damage from flooding.

The Bellevue Planning Commission held three

public hearings in connection with the request. They were held on December 8, 1977, and January 19 and February 9, 1978. Again, opposition was voiced by the adjacent residents. As a result, the commission, at the December meeting, required the developer to abandon plans for the construction of high rise apartments on a large lot between the existing homes and the college. Greater Omaha agreed with the request and revised the plat. On February 9, 1978, the planning commission approved the preliminary plat and initial request for rezoning, on the condition, however, that a portion of one of the streets designated as Cohen Drive be redesigned and approved by the city engineer and the city planner.

On February 20, 1978, the Bellevue City Council considered the planning commission's recommendations at a public hearing. The council voted to continue the hearing until February 27, 1978, to permit the applicant an opportunity to change certain of the street designs. At the meeting held on February 27, 1978, the city council considered the revised preliminary plat with the street changes. In addition to the changes shown on the plat, the city council added three more conditions which Greater Omaha had to meet, and with those changes the city council approved the preliminary plat and rezoning.

The record establishes that while Cohen was dissatisfied with the changes and conditions imposed by the city council, he nevertheless accepted them. The record discloses, however, that no further action was taken by Cohen to complete the plat and zonings following the approval by the Bellevue City Council of the preliminary plat, and on November 6, 1978, Cohen died. His interest in the partnership passed to his wife.

Greater Omaha maintains that the decision of the trial court was in error in two respects. First, Greater Omaha maintains that the trial court erred in finding that the conditions precedent to Greater Omaha's obligations to perform had, in fact, oc-

curred, and, second, Greater Omaha maintains that the trial court erred in enforcing a contract that was unenforceable under the Nebraska statute of frauds because the real property to be conveyed was not adequately described in the document.

Turning first to the matter of the conditions precedent, we believe the trial court was correct. The specific, pertinent language of the letter agreement entered into between Bellevue College and Greater Omaha, and for which Bellevue College agreed to support the zoning request, provided as follows:

3) You [Greater Omaha] would arrange for the conveyance to us of approximately two acres of your property adjacent to Betz Road without cost to us so that the vacated portion of Betz Road would ultimately be the property of Bellevue College.

4) You would agree to provide us with a minimum of 150,000 cubic yards of dirt and a maximum of 250,000 cubic yards of dirt, as determined by your engineer in the preparation of a grading plan, to be moved at our expense and used to raise the elevation of College property as a means of preventing damage from flooding.

. . . .

I agree to the above conditions this 10th day of November, 1977, subject to the requested zoning and all of the above being accomplished within twelve months of the above date.

The last paragraph, making the obligations subject to completion of platting and zoning within 12 months, was signed by Herman Cohen.

Greater Omaha maintains that by reason of the letter agreement it was not obligated to convey the land or provide the dirt unless "the requested zoning and all of the above" were accomplished within 12 months from November 10, 1977. Everyone agrees that neither the requested zoning nor the final plat was, in fact, approved within 12 months from November 10, 1977, and, therefore, unless the time limit for accomplishing the final platting and rezoning

was waived, Greater Omaha is under no obligation to either convey the land or deliver the dirt.

We believe, however, the evidence in this case establishes that the failure to accomplish the desired ends was due solely to the fault of Greater Omaha and that Greater Omaha is not excused from either conveying the property or delivering the dirt. The record is clear that the reason that neither the zoning nor final platting was accomplished was due solely to the inaction of Greater Omaha and that, had Greater Omaha taken any further steps, both the zoning and the final platting would have been received. John E. Rice, the city attorney for the city of Bellevue, testified at trial that, in his opinion, the city council had no choice about approving the final plat and the zoning ordinance after approval of the preliminary plat. However, as disclosed by the evidence, Greater Omaha never produced a final plat, nor ever requested approval for it. Cohen's daughter and partner, Florence Davis, testified that she did not proceed with the final platting process because her father had died and she was in the process of obtaining a divorce, and because she was not satisfied with the street layouts. Her dissatisfaction, however, following the acceptance of the preliminary plat by the city council, came too late, and it does not entitle Greater Omaha to refuse to perform the obligations owed to Bellevue College. As a general rule, a condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition. That person must put forth a good faith effort to obtain the condition. See *Hahn v. International Management Services, Inc.*, 207 Neb. 229, 298 N.W.2d 140 (1980). Additionally, if a promisor prevents or hinders the occurrence of a condition precedent, the condition is excused. See *Keystone Bus Lines v. ARA Services*, 214 Neb. 813, 336 N.W.2d 555 (1983). In the present case, the record seems clear beyond question that the only reason that the final plat and

188

zoning were not obtained within the required 12-month period was the failure on the part of Greater Omaha to proceed to seek such approval. We believe that under the facts presented in this case, Greater Omaha cannot be relieved of its obligations by reason of the fact that it failed to follow through on its own request.

Having thus disposed of the first assignment, we turn to the second, which is to the effect that the description contained in the letter agreement is not adequate to permit specific performance as requested, and, in fact, the description violates the statute of frauds. The trial court correctly held to the contrary.

The rule with regard to the sufficiency of a description is of longstanding origin in this jurisdiction. In *Holliday v. McWilliams*, 76 Neb. 324, 328-29, 107 N.W. 578, 580 (1906), this court said:

> In actions brought for the specific performance of contracts to convey real estate, the land must be described in the contract with such clearness and accuracy that it can be identified and its boundaries determined beyond the possibility of future controversy; and yet there are many cases in which no specific description of the land has been given, where it has been referred to in general terms, in which it has been held that the action could be maintained. The rule undoubtedly is that that is definite and certain which can be made certain by parol proof which does not contradict what appears in writing.

Further, in *McCarn v. London*, 83 Neb. 201, 202, 119 N.W. 251 (1909), we said:

> It is a general rule that the description of land in a memorandum of a contract for the sale thereof must be sufficiently definite to identify the land by its own terms *or* by reference to external standards in existence at the time of the making of the contract, and capable of being determined beyond dispute.

(Emphasis supplied.) That is, while ideally the description should be specific in the writing, if there is sufficient writing so that with the use of reliable external standards the description can be made certain, it will satisfy the requirements of law. As an example, in *Wisnieski v. Coufal*, 188 Neb. 200, 195 N.W.2d 750 (1972), the contract described the land to be conveyed simply as "120 acres." This court held that there was a sufficient writing, when viewed in light of parol evidence, that established that the party, at all times relevant to the case, owned only one farm and the farm contained 120 acres. Similarly, in *Schneider v. Patterson*, 38 Neb. 680, 684, 57 N.W. 398, 399-400 (1894), the land was described as " 'Four acres out of lot four in S.E. ¼ of the N.W. ¼ of sec. 5, T. 12, R. 11, in Cass county, Neb., lying on the north side of the railroad track.' " The person in question owned more than 4 acres lying on the north side of the railroad track. However, the plaintiffs were permitted to show that the parties had gone upon the land and plowed a furrow along the portion that they intended to be one of the tracts and that they had stepped off the rest of the tract, thereby agreeing to the boundaries.

We believe that an examination of the language of the contract, together with other reliable evidence, shows what was intended by the language contained in paragraph "3)" of the letter agreement dated November 10, 1977. It is clear from the language of the letter that the college wished to acquire land adjacent to Betz Road so that when Betz Road was vacated under the proposed plat, the college thought it would acquire title to the vacated street. The reason for Bellevue College's believing that is relatively simple. Generally, under the law of Nebraska, absent a reservation of title, when a city street is vacated, the title to the vacated street reverts one-half each to the owners of the property abutting the vacated street. *Dell v. City of Lincoln*, 170 Neb. 176, 102 N.W.2d 62 (1960). Unfortunately, this may not

be the case in a city of the first class. See Neb. Rev. Stat. § 16-611 (Reissue 1983). This, however, does not change the situation. There is, we believe, sufficient evidence to permit the court to order specific performance. The location of Betz Road is known and is definite and ascertainable. Likewise, the amount of ground to be conveyed to Bellevue College is ascertainable. Furthermore, it appears from an examination of certain of the preliminary plats that the property ordered by the trial court to be conveyed by Greater Omaha to Bellevue College is exactly the land which was designated by Greater Omaha as a specific lot in exhibits 15 and 16, first as Lot 40 and then as Lot 41. While the record is unclear as to whether the location of the lot to be conveyed was in existence at the time the letter agreement was entered into, it is clear that the land ordered conveyed by the trial court coincides exactly with a lot designed by Greater Omaha abutting Betz Road and containing approximately 2 acres. The evidence leaves no doubt that, at least in the minds of the developers, what ultimately became Lot 41 was intended to be, at some point, conveyed to Bellevue College in satisfaction of paragraph "3)" of the letter agreement. We therefore believe that the description, under the circumstances, is sufficient and that the contention by Greater Omaha that it is insufficient to satisfy the statute of frauds is without merit.

For these reasons, therefore, the decision of the trial court is in all respects affirmed.

AFFIRMED.