DON F. BROWN AND EILEEN BROWN, APPELLEES, V. ALRON, INC., A
NEBRASKA CORPORATION, APPELLEE, AND RONALD A.
HENNINGSEN, AN INDIVIDUAL, APPELLANT.
388 N.W.2d 67

Filed June 6, 1986.   No. 84-901.

James P. Fitzgerald of McGrath, North, O'Malley & Kratz, P.C., for appellant.

Thomas J. Culhane of Erickson & Sederstrom, P.C., for appellees Brown.

KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

HASTINGS, J.
Defendant Ronald A. Henningsen appeals a judgment of the district court for Douglas County holding him liable for breach of a contract to purchase a business from the plaintiffs and awarding damages against him in the amount of $73,581.67.

Don F. Brown, one of the plaintiffs, was a stockholder and officer of Advanced Business Equipment and Systems, Inc. (ABES), a Nebraska corporation. Brown ran the corporation, which specialized in sales of office equipment, filing systems, and supplies. In the spring of 1978 Brown discussed with Al Henningsen, the defendant's father, his intention to sell ABES. The Henningsens were owners of the Record Printing Co., which published the Daily Record, a legal newspaper in Douglas County, as well as owners of several other companies.

Negotiations for the sale of ABES included Al's son, Ronald, and were concluded in August of 1978. The agreement called for the sale of the stock in the company to Record Printing Co. for $85,000, plus a loan guarantee from purchaser to seller in the amount of $20,000. The parties also agreed that Brown would continue to represent ABES for a period of 3 years and would train the purchaser's personnel in marketing and installing the products. The contract was signed August 18, 1978, by Brown and by Ronald A. Henningsen as president of. Record Printing Co.

Shortly thereafter, the parties agreed to restructure the sale of ABES, using Alron, Inc., a stock holding company owned by the Henningsen family, as the purchaser, and reducing the purchase price to $77,699. This second agreement also contained the $20,000 loan guarantee and Brown's commitment to continue his association with ABES. It was signed by both Brown and his wife as sellers and by Ronald A. Henningsen as president of Alron.

On October 2 of that year Brown turned over the physical possession and financial records of ABES, pursuant to the sales agreement. Several days before he relinquished control, Brown wrote a check to himself on the ABES account for $10,142.51. This will be discussed later on. Thereafter, Brown continued his representation of the company and consulted with sales personnel.

In the spring of 1979 Ron asked Brown if he would take over the management of the company, and due to his friendship with Al and the fact that the business was going downhill, Brown accepted. Brown experienced numerous difficulties relating to the finances of the company. Manufacturers were refusing to deliver products due to the failure of the company to make payments. Brown had no control over the finances, as the comptroller of the Henningsen-owned Record enterprises handled all money matters.

The failure to satisfy manufacturers led to late deliveries and dissatisfied customers when promised merchandise could not be delivered. Brown even went so far as to use his own funds to get releases from manufacturers. Business declined steadily, and in March of 1980 Brown quit because he "couldn't take the stress and the problems," and "because the situation was so bad there was nothing to manage, just problems."

No further payments were made pursuant to the contract, and Brown brought suit against Alron and Ronald A. Henningsen for breach of contract. The trial court ruled that the purchasing corporation, Alron, was at all times grossly undercapitalized and, inter alia, was a mere facade for the personal dealings of Ron. The court held for the Browns and found a balance due on the loan of $20,000, with credit given for $10,627.83 for income tax refunds improperly retained by

Brown, and that $48,999.93 was still owing under the purchase agreement. Judgment was entered on behalf of the Browns for $73,581.67, which amount included interest. From this ruling the defendant Ronald A. Henningsen appeals, and Alron, Inc., having been adjudged bankrupt, has not appealed.

Appellant Henningsen asserts as error the trial court's (1) failure to find that Brown breached the contract first, (2) finding that Alron was the alter ego of the appellant, (3) granting of equitable relief when Brown had unclean hands, and (4) failure to find that Brown misappropriated $10,142.51. We affirm.

Henningsen argues that Brown breached the contract first by ending his association with ABES in violation of the provision which required him to represent the company and train employees for 3 years. The monthly purchase payments were made until Brown quit the company. The law of Nebraska is clear that "[g]enerally, a party who has failed or refused to perform the terms and conditions imposed upon him by a contract, or has not been ready, willing, and able to perform the same, cannot recover for a breach thereof by the other party." *Tibbs v. Fisher*, 208 Neb. 306, 308, 303 N.W.2d 293, 295 (1981).

While Henningsen's argument correctly states the law, it fails to recognize the purchaser's own culpability which resulted in Brown's decision to quit. ABES, as handled by new management, repeatedly and continuously failed to meet its financial obligations. Brown had trouble in obtaining his commission fees and in getting financial information of any sort from the company's fiscal officer. The company did not make timely payments to the manufacturers it dealt with, which resulted in the inability of sales personnel to deliver products on time and in customer dissatisfaction. ABES, through its officers, refused to respond to inquiries and essentially left Brown to deal with the confusion that resulted.

On the other hand, the record reflects that Brown made every attempt to fulfill his part of the bargain. He sent employees to training seminars, consulted with them, took them to customer accounts, worked on proposals, and recommended specializations. He continued to act as a salesman and even took over management responsibilities when

Henningsen asked him to. He tried to deal with customer complaints and disgruntled sales personnel as well as unpaid manufacturers. Promises of financing that never materialized resulted in the complete deterioration of the company. Under these conditions Brown continued to work for approximately 18 months.

Substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform his part of the contract. (2) The results of the endeavor are beneficial to the other party. (3) Such benefits are retained by the other party. If any one of the circumstances is not established, the performance is not substantial, and the party had no right of recovery. The other party should receive at least approximately what he bargained for.

*Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.*, 194 Neb. 473, 476-77, 233 N.W.2d 299, 301 (1975).

The evidence is clear that for the 18 months Brown continued with ABES, he in good faith performed his obligations under the contract, that his performance was beneficial to the company, and that such benefits were retained by its ownership. The remaining question is whether his disassociation with the company after 18 months resulted in his failure to substantially perform.

As a general rule, a condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition. That person must put forth a good faith effort to obtain the condition. . . . Additionally, if a promisor prevents or hinders the occurrence of a condition precedent, the condition is excused.

(Citations omitted.) *Bellevue College v. Greater Omaha Realty Co.*, 217 Neb. 183, 187, 348 N.W.2d 837, 840 (1984).

Brown's performance of his obligations under the contract was substantially hindered and obstructed by the financial maneuverings of ABES' new ownership. Brown in good faith worked for the company until financial mismanagement, over which he had no control, ran the company into the ground and "there was nothing to manage, just problems." We conclude

that Brown substantially performed under the contract, and his failure to continue performance was excused due to Henningsen's and Alron's intervention.

Second, Henningsen complains that the trial court erred in finding that Alron was merely his alter ego.

> A corporation is a legal entity complete and separate from its shareholders and officers. . . . Generally, the shareholders of a corporation are not liable for its debts or other obligations. . . . In equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice. . . .
>
> Some of the factors which are relevant in determining to disregard the corporate entity are: (1) Grossly inadequate capitalization; (2) Insolvency of the debtor corporation at the time the debt is incurred; (3) Diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses; and (4) The fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

*Slusarski v. American Confinement Sys.*, 218 Neb. 576, 578, 357 N.W.2d 450, 452-53 (1984).

In deciding to disregard Alron's corporate entity, the trial court made the following finding of facts:

> [T]hat the capitalization of Alron, Inc. was and remained grossly inadequate; that Alron, Inc. was incorporated on April 30, 1975 but was actually dissolved in August of 1976 for non-payment of taxes and was not revived until the certificate of revival was issued in January, 1981; Alron, Inc. had not been capitalized as of the date of the agreement herein, August 18, 1978, and, in fact, issued its first shares of stock on January 7, 1981 at which time it issued 100 shares of stock at $1.00 per share; this Court further finds that Alron, Inc. did not file tax returns until 1981; that its first checking account was opened April 26, 1979 with a zero balance, no deposits were ever made therein, and the account was closed for inactivity on

August 9, 1979; that no regular corporate meetings were held nor were corporate minutes kept prior to December, 1980.

Furthermore, money from Advanced Business Systems, Inc. in the amount of $1,000.00 per month was paid to defendant, Ronald A. Henningsen although he testified that he considered himself an investor; that other monies from Advanced Business Systems, Inc. were taken from its operations to pay the obligations of other companies in which the defendant, Ronald A. Henningsen, had an interest during the time the corporation was in a state of dissolution. The Court finds the subject agreement was entered into by the defendant corporation at the time the corporation was dissolved and the Court finds that the defendant had knowledge of the dissolution and ample opportunity to correct the matter, that the corporation was a mere facade for the personal dealings of the defendant and that the operations of the corporation were carried on by him in disregard of the corporate entity and to the prejudice of the plaintiff as a creditor.

The findings of the trial court are amply supported by the record, and the court's ruling disregarding the corporate entity was in all respects correct.

Henningsen's third argument is that Brown should be denied equitable relief because he did not come before the court with clean hands. Henningsen complains that Brown acted unfairly in two regards: (1) He quit without notice when he had contracted to work for an additional 18 months; and (2) He improperly took funds from ABES without authorization.

" 'Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' "

The conduct which forms a basis for a finding that a party has "unclean hands" must be willful in nature. "The

maxim refers to willful misconduct rather than merely negligent misconduct. The improper conduct which falls within the maxim must involve intention as opposed to an inadvertent act or a misapprehension of legal rights."

(Citations omitted.) *Voichoskie v. Voichoskie*, 215 Neb. 775, 777, 340 N.W.2d 442, 444 (1983).

Henningsen's contention that Brown's failure to stay with the company was inequitable is without merit. As discussed previously, Brown's actions were precipitated by the mismanagement of ABES, and consequently those actions were justified.

The record does reflect that Brown appropriated tax refund checks in the amount of $10,627.83. The evidence also shows that Brown thought he was entitled to the money because he owned the company during the relevant tax years. His conduct demonstrates a misapprehension of legal rights, not the sort of willful misconduct contemplated by the "clean hands doctrine." Any inequity was adequately addressed by giving credit for the amount in the judgment.

Henningsen also complains that the check Brown wrote to himself, in the amount of $10,142.51, after the signing of the purchase agreement but before the closing of the sale, constituted improper conduct. Henningsen makes no showing of impropriety in this regard. The company was still owned by the Browns and there is nothing to indicate that the funds were not properly withdrawn. As Henningsen alleged the impropriety, it was his burden to make a showing of such. Failing to do so, the Browns are found to have been entitled to the equitable relief they requested.

The final assignment of error concerned Brown's appropriation of ABES funds prior to closing. Having addressed this issue and finding no misconduct, the trial court correctly determined that Henningsen was not entitled to a credit in the amount of $10,142.51.

The decision of the trial court is in all respects affirmed.

AFFIRMED.