NOEL L. CHADD AND GLORIA J. CHADD, APPELLANTS, V. MIDWEST FRANCHISE CORP., A NEBRASKA CORPORATION, APPELLEE.

412 N.W.2d 453

Filed September 18, 1987.   No. 85-840.

Louis Michael Thrasher, for appellants.

David A. Blagg and Harold L. Hadland of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Noel L. and Gloria J. Chadd appeal from an order of the Douglas County District Court sustaining Midwest Franchise Corp.'s motion for summary judgment.

This case arises out of a contract dispute between the Chadds and the appellee, Midwest Franchise Corp., a Nebraska corporation. Evidence was received by the district court in support of and in opposition to a motion for summary judgment. Taking a version most favorable to the appellants, the facts appear to be as follows. After some preliminary negotiations the parties executed a document entitled "Lease Agreement" on May 9, 1979. Chadds agreed to lease their land and a building, to be constructed, to Midwest. The building was to be used as a Bonanza restaurant. Chadds were to erect a

building, or subcontract the construction, in accordance with plans and specifications provided by Midwest. Chadds were responsible for obtaining bids (including a bid by Chadds themselves) and submitting the same to Midwest for its approval.

The facts are in dispute as to the problems which arose after the lease agreement was executed. Apparently, Chadds were furnished with a standard Bonanza building floor plan, the B-76 plan, which originated from Bonanza International in Dallas, Texas. Midwest made a decision to alter the B-76 plan for the Nebraska area. At least in part, the dispute in this case involves difficulties surrounding the acquisition of final plans for the purpose of an accurate construction bid.

Noel Chadd alleges that he was unable to obtain a complete working set of drawings required for an accurate bid. He notified the principals of Midwest, Larry Miller and Charles Shada, of this problem on several occasions. Both Miller and Shada admit that there had been considerable problems in obtaining final plans from Midwest's architect. Shada, however, believed that Chadd eventually received a complete, final set of plans from the architect. Chadd alleges that he never received an acceptable set of plans and specifications.

Chadds solicited one bid from Belmont Construction Company based on incomplete plans. They did not advertise generally for the bids, nor submit a bid themselves, because they were waiting for a resolution to the problem with the drawings. The one bid which Chadds received was above the estimated cost of construction set forth in the lease agreement. However, that cost apparently could have been reduced if modifications were allowed, and that would not be known without a final set of plans.

On or about August 22, 1979, Noel Chadd received a letter from Midwest which indicated Midwest's desire to rescind the lease agreement. In addition, on August 15, 1979, Chadd was informed by another landowner, Bill Lesoing, that Midwest had been negotiating with Lesoing and that it had signed a contract with him. Apparently, Midwest had been negotiating the Bonanza construction project with two other landowners besides Chadds. All three parcels of land were in close

proximity.

Chadds concluded the agreement with Midwest was breached as of August 22, 1979. The evidence is ambiguous, at best, as to Midwest's intention when it sent the attempted rescission letter. Operating under the assumption that the agreement was not going to materialize, Chadds began to explore other options for their land. Eventually, the Chadds conveyed the land to other parties by executing a joint tenancy warranty deed on July 26, 1983.

The district court, following the words of Neb. Rev. Stat. § 25-1332 (Reissue 1985), found that there were no genuine issues of material fact and that Midwest was entitled to judgment as a matter of law. The court's order did not elaborate as to the basis for its decision. This court was compelled to search the record and examine every conceivable issue which might have been the deciding factor for the lower court's determination.

Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. *Cornhusker Agrl. Assn. v. Equitable Gen. Ins. Co.*, 223 Neb. 618, 392 N.W.2d 366 (1986). Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *In re Estate of Thompson*, 225 Neb. 643, 407 N.W.2d 738 (1987). The burden is on the moving party to show that no issues of material fact exist, and unless the party can conclusively do so, the motion must be overruled. *Schrodt v. Sullivan Transfer & Storage Co.*, 222 Neb. 347, 383 N.W.2d 767 (1986). Summary judgment is not appropriate, even where there are no conflicting evidentiary facts, if the ultimate inferences to be drawn from those facts are not clear. *Id.* In considering a motion for summary judgment, the evidence is to be viewed in the light most favorable to the party against whom the motion is directed, giving to that party the benefit of all reasonable inferences which may be drawn from the evidence. *In re Estate of Thompson, supra.*

The first issue that must be addressed in this action is whether there was an enforceable contract under which the appellants could recover. A lease is to be construed as any other contract. *Omaha Country Club v. Dworak*, 186 Neb. 336, 183 N.W.2d 264 (1971). The proper construction of a written contract is generally a question of law to be determined by the courts. *Dockendorf v. Orner*, 206 Neb. 456, 293 N.W.2d 395 (1980).

Of particular concern in this action is whether, as a matter of law, paragraph 3 of the lease agreement negates the enforceability of the instrument. Paragraph 3 states in part:

> 3. CONSTRUCTION. Upon execution of this Lease, Owners [Chadds] shall proceed to obtain bids (including a bid by Owners) for the construction of the building in accordance with the attached plans and specifications which have been prepared and approved by Tenant [Midwest]. Upon Owners' acceptance and approval of a construction bid, *the same shall be submitted to Tenant for acceptance and approval.* It is estimated that the cost of the building will be between $240,000 and $260,000.

(Emphasis supplied.)

Approval or satisfaction clauses such as that found in the highlighted language above often give rise to arguments that the agreement is too vague or illusory. An agreement which depends on the wish, will, or pleasure of one of the parties is unenforceable. *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984). Mutuality of obligation is an essential element of every enforceable agreement. *Id.* In the present case the question becomes whether Midwest was required to accept or approve any bid at all if submitted by Chadds. In other words, Was Midwest's obligation to perform merely illusory?

Such satisfaction or approval clauses are generally held not to be too vague or illusory. The party to be satisfied must act in good faith or not unreasonably disapprove the subject matter. Reasonableness or good faith can be inferred with respect to the terms of a lease, which must be acceptable to the tenant. See, *In re Wonderfair Stores, Inc. of Arizona*, 511 F.2d 1206 (9th Cir. 1975); *Mattei v. Hopper*, 51 Cal. 2d 119, 330 P.2d 625 (1958). The inference of good faith or reasonableness provides a

standard against which a party's performance is measured. Such "on approval" or "satisfaction" clauses are not used as a vehicle to defeat contracts. " ' "[S]uch contracts have been almost universally upheld.". . .' " *In re Wonderfair Stores, Inc. of Arizona, supra* at 1210. The bid approval clause in the case at bar does not invalidate the entire agreement.

Appellee contends that several conditions precedent exist, in this lease agreement, which were not performed by appellants. For this reason, appellee asserts, the agreement is not enforceable. It is true that where a contract is executed but its effectiveness is dependent upon the fulfillment of an agreed condition before it can become a binding contract, such contract cannot be enforced unless the condition is performed. *K & K Pharmacy v. Barta*, 222 Neb. 215, 382 N.W.2d 363 (1986). Generally, a party who has failed or refused to perform the terms and conditions imposed upon him by a contract, or has not been ready, willing, and able to perform the same, cannot recover for a breach thereof by the other party. *Brown v. Alron, Inc.*, 223 Neb. 1, 388 N.W.2d 67 (1986).

However, it is equally true that a condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition. That person must put forth a good faith effort to obtain the condition. Additionally, if a promisor prevents or hinders the occurrence of a condition precedent, the condition is excused. *Id.*

Midwest asserts that Chadds never submitted a bid as required, could not keep construction costs within the stated cost estimate, never attached a required addendum setting forth exact rental costs, and did not complete the building or deliver possession of such to Midwest for its acceptance. Chadds allege that these conditions precedent were not fulfilled because Midwest prevented or hindered Chadds from performing as required. Therein lies the basis for this court's conclusion that a summary judgment in this case was inappropriate. The record reflects a number of genuine issues of material fact.

There is evidence that Midwest or its architect delayed completion of finalized plans. The evidence is conflicting as to whether Chadds ever received final plans and specifications. Noel Chadd asserts that he could not generally advertise for

bids nor obtain an accurate bid due to inadequate drawings. In short, all of the unfulfilled conditions precedent asserted by Midwest were arguably contingent upon Chadds obtaining final plans. The issues of reasonableness and good faith as to performance by the parties are questions of fact for a jury. 17A C.J.S. *Contracts* § 630 (1963). In addition, the questions of responsibility for delay and whether performance was prevented or delayed by an adverse party are questions of fact for a jury. *Id.*

Appellants further contend that they were unable to ever satisfy these conditions precedent due to the appellee's repudiation of the contract. The record indicates that Noel Chadd received a letter of desire to rescind from Midwest dated August 22, 1979. Chadd was informed on August 15, 1979, by another landowner that Midwest had signed an agreement to construct the planned Bonanza on that individual's land. There is some evidence that Chadd was told by one of the principals of Midwest, Larry Miller, that Midwest "wanted out" of the lease agreement.

An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance and is the outcome of words or acts evincing an intention to refuse performance in the future. *Hooker and Heft v. Estate of Weinberger*, 203 Neb. 674, 279 N.W.2d 849 (1979).

In a case such as this where one party (Chadds) has not fulfilled certain conditions precedent to the other party's (Midwest's) duty to perform, a special rule of law applies. Where a party's repudiation contributes materially to the nonoccurrence of a condition of one of his duties, the nonoccurrence is excused. Restatement (Second) of Contracts § 255 (1981).

The question of whether there has been repudiation or whether repudiation was justified is a question of fact for the jury. 17A C.J.S. *Contracts* § 630(e) (1963); 17 Am. Jur. 2d *Contracts* § 443 (1964); *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 405 N.E.2d 1051 (1980). In this case, whether the words or acts of Midwest evinced an intention to refuse performance in the future is a genuine issue of material fact which cannot be disposed of by summary judgment.

Appellee has raised the issue of whether appellants can recover damages in this action. As a general rule, one injured by a breach of contract is entitled to recover all of his damages, including gains prevented as well as losses sustained, provided they are reasonably certain and such as might naturally be expected to follow the breach. *Quad-States, Inc. v. Vande Mheen*, 220 Neb. 161, 368 N.W.2d 795 (1985). Of particular importance to this appeal from a summary judgment, it should be noted that appellee has challenged appellants' version of the measure of damages. Where the measure of damages has been challenged by objections to the pleading or evidence, such objections require submission of the correct measure of damages to the jury if there is competent evidence to support it. *Beveridge v. Miller-Binder, Inc.*, 177 Neb. 734, 131 N.W.2d 155 (1964).

This court declines to determine the materiality of the facts or issues which bear on damages without a more complete trial record. The appropriateness of damages may be affected by parol evidence of subsequent modifications of the contract, and this court will not discuss such issues in the absence of proof.

The depositions, pleadings, and interrogatories offered to support and oppose the motion for summary judgment raise numerous factual disputes. Certainly the inferences to be drawn from these material facts are not clear. Midwest Franchise Corp. has failed to meet its burden of establishing conclusively the lack of any material issue of fact in this case. Accordingly, the judgment is reversed and the cause remanded for trial.

REVERSED AND REMANDED.