LUSCHEN BUILDING ASSOCIATION, A COPARTNERSHIP, APPELLEE, V. FLEMING COMPANIES, INC., A CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, ALFRED W. DOLEZAL ET AL., THIRD-PARTY DEFENDANTS, APPELLANTS.

415 N.W.2d 453

Filed November 20, 1987.   No. 85-946.

Stephen H. Nelsen and Shawn D. Renner of Cline, Williams, Wright, Johnson & Oldfather, for appellant Fleming Companies.

Stephen C. Hansen and Eugene G. Schumacher of Luckey, Sipple, Hansen, Emerson & Schumacher, for appellants Dolezal et al.

Vance E. Leininger of Leininger, Grant, Rogers & Maul, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

This is an appeal from the district court for Platte County. Fleming Companies, Inc. (defendant and third-party plaintiff

below), Alfred W. Dolezal, Christine Dolezal, Joseph L. Gdowski, and Marcelline L. Gdowski (third-party defendants below) appeal from a summary judgment order and a judgment entered pursuant to that order. The appeals have been consolidated.

This appeal involves the interpretation of a lease, specifically a repair clause within a lease and a sublease. Luschen Building Association, appellee lessor, brought this action in the district court against Fleming, lessee, to compel it to repair or replace a parking lot on leased premises. Fleming then filed a third-party complaint against Dolezals and Gdowskis, sublessees, which alleged that if Fleming was held liable for said repairs, then the sublessees would be liable to Fleming for that work.

Luschen and Fleming entered into the original lease agreement on July 15, 1966. This lease was amended twice to extend the term and provide for increased rental rates. The repair clause remained as it had been set forth in the original lease. This clause, section 9, is at the heart of the dispute in this case and is set out in its entirety.

9. The Lessor shall maintain in good condition the structural parts of the building on the premises, including the exterior walls, roof, footings, and foundation, and shall perform any repairs made necessary by reason of such maintenance.

The Lessee shall maintain in good condition the interior of the building on the premises including all doors both manually-operated and automatic, all glass including glass exposed to the exterior, and all heating, air conditioning, electrical, and plumbing fixtures, equipment, and services in said building or on the premises appurtenant thereto, and in addition shall provide all painting and decorating to the exterior of said building, and shall provide all maintenance and repair to the parking lot, parking lot lights, lighting, and striping.

Should either the Lessor or the Lessee fail, for a reasonable period of time after notice by the other, to maintain the portions of the premises herein undertaken by each to be maintained, in good, and substantially their present condition, reasonable use, wear, and tear

excepted, the other party hereto having so given reasonable notice of the necessity for such maintenance, may proceed to provide such maintenance as reasonably required on behalf of the party so failing to provide the same; and if provided by the Lessee on behalf of the Lessor, the former may deduct the cost thereof from future installments of base rent as the same become due until reimbursed; and if provided by the Lessor on behalf of the Lessee, the cost thereof shall be paid by the Lessee to the Lessor simultaneously with the next monthly installment of base rent when the same falls due.

The sublease at issue in this case has a more complicated history. Fleming originally sublet the premises to parties not associated with this appeal on July 16, 1966. Those sublessees assigned the sublease to Dolezals and Gdowskis on March 26, 1968, to become effective April 7, 1968. The term was to expire July 15, 1976.

In June of 1972 Fleming and the sublessees, Dolezals and Gdowskis, executed a revised sublease which superseded and replaced the 1966 assigned sublease. The 1972 sublease agreement extended the initial term by allowing the agreement to automatically renew for 6 more years after July 15, 1976. There was also a rental rate increase for the additional 6-year term. The additional term was to expire July 15, 1982.

Finally, on October 22, 1981, Fleming and the sublessees executed the last sublease agreement for a term commencing July 16, 1982, and ending July 15, 1987. This sublease was in effect and controlling on October 7, 1982, the time when the correspondence began which led to the present appeal.

The relevant sublease provisions which are crucial to this appeal are set forth as follows:

1. The terms of the ORIGINAL LEASE hereinabove referred to are herein incorporated by reference with like force and effect as if the same had been fully set out, and SUBLESSEE acknowledges receipt of a true and correct copy of said ORIGINAL LEASE.

. . . .

9. SUBLESSEE shall perform the covenants and obligations of SUBLESSOR under the ORIGINAL

LEASE regarding maintenance and repair to the premises in strict accordance with the terms of Paragraph 9 of the ORIGINAL LEASE.

The ORIGINAL LESSOR shall maintain in good condition the structural parts of the building on the premises, including the exterior walls, roof, footings, and foundation, and shall perform any repairs made necessary by reason of such maintenance.

The SUBLESSEE shall maintain in good condition the interior of the building on the premises including all doors both manually-operated and automatic, all glass including glass exposed to the exterior, and all heating, air conditioning, electrical, and plumbing fixtures, equipment, and services in said building or on the premises appurtenant thereto, and in addition shall provide all painting and decorating to the exterior of said building, and shall provide all maintenance and repair to the parking lot, parking lot lights, lighting, and striping.

Should the SUBLESSEE fail, for a reasonable period of time after notice by the SUBLESSOR, to maintain the portions of the premises herein undertaken by SUBLESSEE to be maintained, in good, and substantially their present condition, reasonable use, wear, and tear excepted, the SUBLESSOR hereto having so given reasonable notice of the necessity for such maintenance, may proceed to provide such maintenance as reasonably required on behalf of the SUBLESSEE so failing to provide the same; and if provided by the SUBLESSOR on behalf of the ORIGINAL LESSOR, the former may add the cost thereof to future installments of base rent as the same become due until reimbursed.

Section 10 is set out only in pertinent part as follows:

10. SUBLESSEE covenants that it will pay the rent stipulated at the time and place specified; that it will use the premises solely for the purpose above specified; that it will, at its expense, keep the premises and improvements thereon, in the same good order and repair in which they now are or may hereafter be placed, except (1) usual wear and tear, (2) acts of God and unavoidable casualties, (3)

repairs of defects for which ORIGINAL LESSOR is responsible under the ORIGINAL LEASE, and (4) damages and loss for which SUBLESSOR and ORIGINAL LESSOR have waived recovery under said ORIGINAL LEASE.

The record reveals that on October 7, 1982, Luschen began corresponding with Fleming about the deteriorating condition of the parking lot on the leased premises. Fleming then passed these concerns along to the sublessees, Dolezals and Gdowskis, and directed them to make the repairs demanded by Luschen. Sometime prior to September 1983 some repairs were undertaken on the parking lot, consisting of asphalt caulk in the cracks of the concrete. This repair was unsatisfactory to Luschen.

Correspondence between the parties continued at least through late October 1983. Luschen filed suit against Fleming for enforcement of the lease on May 10, 1984. On October 1, 1985, after numerous motions were filed and steps were taken in pretrial proceedings, Luschen eventually filed a motion for summary judgment. A hearing on the motion was held on October 11, 1985, and evidence was adduced. On November 7, 1985, another hearing was held and orders of the court were handed down regarding the parties' liabilities. A partial summary judgment was entered in favor of Luschen and against Fleming. The order stated that Fleming was "responsible under the lease agreement for . . . necessary repairs to the parking lot" and that the only issue to be tried is the question of costs and specifications of such repairs.

The court then heard a stipulation from all the parties regarding the manner of the accomplishment of the repairs and time for completion. The stipulation specifically stated that defendant and third-party defendants reserved all rights to appeal the separate judgments against them regarding actual liability for those repairs.

Finally, the court then heard arguments and received evidence regarding the action between Fleming and sublessees, Dolezals and Gdowskis. That same day the court entered a judgment against the sublessees and in favor of Fleming, holding that sublessees had assumed all the obligations to repair

and maintain the parking lot. Therefore, the court held that sublessees were liable for the repairs which had been deemed the duty of Fleming in the prior summary judgment order.

Appellant Fleming assigns as error that the district court erred in granting summary judgment for Luschen because (1) the court misinterpreted the lease provisions as a matter of law; (2) material issues of fact remain; and (3) the court improperly drew inferences from the evidence in favor of Luschen.

Appellants Dolezals and Gdowskis assign as error that the district court erred in finding that no genuine issue of material fact existed between Fleming and Luschen and finding that no genuine issue of material fact existed between Fleming and sublessees.

We begin our analysis by addressing appellants Dolezals and Gdowskis' second assigned error. The language of the assigned error infers that the district court entered a summary judgment order against sublessees and in favor of Fleming. No motion for summary judgment was ever submitted by Fleming. The record reveals that Fleming and sublessees merely submitted the issue of sublessees' liability to the court at the November 7, 1985, hearing previously mentioned. The only evidence offered and admitted was the various lease and sublease agreements offered by Fleming.

In essence, the sublessees are arguing that the judgment rendered against them was erroneous because it was based on a separate erroneous summary judgment entered against Fleming. For the following reasons, we agree.

Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. *Chadd v. Midwest Franchise Corp., ante* p. 502, 412 N.W.2d 453 (1987). Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Id.* The burden is on the moving party to show that no issues of material fact exist, and unless the party can conclusively do so, the motion must be overruled. *Id.*

The district court found, apparently as a matter of law, that

Fleming was responsible under the original lease agreement for the necessary repairs to the parking lot. This finding by the court had to be based on one of two rationales. The court could have interpreted the lease as unambiguously imposing such repair liability on Fleming as a matter of law, according to the terms of the contract alone. On the other hand, Luschen submitted into evidence letters written to Fleming and replies therefrom and argued that this correspondence constituted admissions of liability on the part of Fleming. Each of these rationales will be addressed separately.

First, it is the law of Nebraska that the construction of a contract, if needed, is a question of law for the court as well as a duty that rests upon the court, and there can be no ambiguity unless and until an application of pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties. *Meyers v. Frohm Holdings, Inc.*, 211 Neb. 329, 318 N.W.2d 716 (1982).

The lease language central to this controversy states that "[s]hould either the Lessor or the Lessee fail . . . to maintain the portions of the premises herein undertaken by each to be maintained, in good, and substantially their present condition, reasonable use, wear, and tear excepted . . . ." An interpretation of the "reasonable use, wear, and tear excepted" language is essential to the determination of this case. The parties to this action are in complete disagreement as to the intent of this language.

Luschen alleges that this language refers to the "permissible condition of the premises, not the cause of that condition." Brief for Appellee at 15. Appellee asserts that the language evinces an intent to require repairs and maintenance once the premises exhibited "unreasonable use, wear, and tear" and had "deteriorated to a point where it was no longer reasonable to expect to continue to use" it in that worn condition. *Id.* In other words, Luschen asserts the premises was not expected to be kept in new condition, but was expected to exhibit some reasonable wear and tear before repairs were needed.

Fleming asserts that this language was intended to except "conditions caused by 'reasonable wear and tear' from the

maintenance obligations imposed on Fleming." Brief for Appellant Fleming at 9-10. In other words, Fleming asserts that if the condition of the parking lot was caused by "reasonable use, wear, and tear," it was Luschen's obligation to repair it as needed.

Ambiguity is measured by an objective standard, not by the subjective contentions of adversaries in a courtroom. That two parties urge opposing interpretations does not necessarily indicate the document is ambiguous. *Burhoop v. Pegram*, 194 Neb. 606, 234 N.W.2d 828 (1975). However, a provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d 620 (1978).

In the case at bar the lease provision at section 9 seems to impose absolute liability on Fleming to maintain and repair the parking lot. However, this repair liability could be seen as limited by the "reasonable use, wear, and tear excepted" clause in the third paragraph of section 9, or by section 11, which contains a surrender clause which also excepts "usual wear and tear." Taken as a whole, the lease agreement is at best ambiguous. The extent to which the "reasonable use, wear, and tear" clause modifies either party's duties, if it does at all, is completely unclear from the face of the document. When the terms of the contract are in dispute and the real intention of the parties cannot be determined from the words used, the jury, and not the court, should determine the issue from all the facts and circumstances. *First Nat. Bank v. Davis*, 123 Neb. 304, 242 N.W. 655 (1932). When it is established that a contract is ambiguous, the meaning of its terms is a matter of fact to be determined in the same manner as other questions of fact which preclude summary judgment. *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 129 N.W.2d 581 (1964). The summary judgment entered against Fleming by the district court was improper in that a genuine issue of material fact existed as to the true intent of the parties to the lease agreement.

As previously mentioned, the court below could have construed the written correspondence between the parties as an admission of liability from Fleming, as was argued below by

Luschen. A review of these letters reveals that this correspondence was a part of the negotiations, looking for a settlement of the dispute between Luschen, Fleming, and sublessees. " 'Evidence of an offer or desire to compromise, consisting of a direct offer to buy peace, or settle a controversy without respect to legal liability, is not admissible against the person making it.' " *Bishop Cafeteria Co. v. Ford, supra* at 618, 129 N.W.2d at 593. If the district court inferred an admission of liability on the part of Fleming from this correspondence, it did so improperly. In considering a motion for summary judgment, the evidence is to be viewed in the light most favorable to the party against whom the motion is directed, giving to that party the benefit of all reasonable inferences which may be drawn from the evidence. *Chadd v. Midwest Franchise Corp., ante* p. 502, 412 N.W.2d 453 (1987). Summary judgment is not appropriate, even where there are no conflicting evidentiary facts, if the ultimate inferences to be drawn from those facts are not clear. *Id.* Fleming was entitled to the benefit of any doubt as to the ultimate inferences to be drawn from the settlement negotiations.

The judgment entered by the court against sublessees was clearly dependent upon the summary judgment entered against Fleming. The court held that Fleming's obligations as to the parking lot had been assumed by the sublessees by virtue of the sublease agreements. It is generally held that an "order, judgment, or proceeding dependent on, or ancillary and accessory to, a judgment, order, or decree which is reversed shares its fate and falls with it." 5B C.J.S. *Appeal and Error* § 1951 at 514 (1958). See, generally, 5 Am. Jur. 2d *Appeal and Error* § 956 (1962). For this reason the judgment against Dolezals and Gdowskis must be reversed, due to its dependence on an erroneous summary judgment, which is also reversed.

REVERSED.

BOSLAUGH, J., concurs in the result.