MATHIAS G. JANSSEN, PERSONAL REPRESENTATIVE OF THE ESTATE OF LILA MAE JANSSEN, DECEASED, APPELLANT, V. MICHAEL TRENNEPOHL, DEFENDANT AND THIRD-PARTY PLAINTIFF, AND RAY D. RETZLAFF, THIRD-PARTY DEFENDANT, APPELLEES.

421 N.W.2d 4

Filed March 25, 1988.   No. 86-324.

Gary J. Nedved and Anne E. Winner of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., and James F. Wefso of Hollstein & Wefso, for appellant.

Kenneth W. Payne, for appellee Trennepohl.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK, D. JJ.

CLARK, D.J.

Plaintiff, Mathias G. Janssen, personal representative of the estate of Lila Mae Janssen, brought a wrongful death action alleging that the defendant, Michael Trennepohl, and Ray Retzlaff were racing their cars when the Retzlaff car collided with a car driven by Lila Mae Janssen, causing her death. Defendant denied the allegations of plaintiff's petition and alleged that the sole and proximate cause of the accident was the negligence of Retzlaff. The district court for Sheridan County granted defendant's motion for summary judgment and dismissed plaintiff's petition. Plaintiff appeals.

The only issue on appeal is whether the district court erred in granting summary judgment. In reviewing a summary judgment, this court must take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may

be drawn from the evidence. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987).

On September 7, 1984, Lila Mae Janssen was killed when the car driven by Retzlaff struck her car on U.S. Highway 20 approximately 3 miles west of Gordon, Nebraska. As a result of the accident, Retzlaff pled guilty to a criminal charge of motor vehicle homicide.

At about 10:15 p.m. on September 7, 1984, Retzlaff, with Donald Molitor as a passenger, left Gordon and drove west on Highway 20. Highway 20 is a two-lane highway which, according to Retzlaff, is straight for approximately 2½ miles out to the "corner" or curve where the accident occurred. Retzlaff recalled passing three vehicles, the first being the car driven by defendant, whom he knew. Retzlaff denied making any gestures or giving any indication to defendant that he wanted to race, but recalled that as he pulled out to pass defendant he could hear defendant "step on the car a little bit." Retzlaff states he then passed two other cars at the same time and as he approached a curve in the highway saw the taillights of the Janssen car. Retzlaff tried to avoid the car but lost control and hit the rear of the Janssen car. Retzlaff estimated that approximately 45 to 60 seconds had elapsed between passing the last two cars and impact.

Molitor generally substantiated Retzlaff's testimony, but estimated the time between passing the last two vehicles and the accident was "[t]hirty seconds to a minute, maybe, if even that." Molitor also testified that defendant had at times talked of having raced with Retzlaff and others on prior occasions.

Defendant recalled that as he left Gordon he noticed that Retzlaff was behind him and that he was going approximately 50 miles per hour when Retzlaff passed him. Defendant stated that he subsequently saw Retzlaff pass three cars all at once and that he himself passed those same three cars all at once also. Shortly thereafter, he saw Retzlaff's brake lights come on and applied his brakes. Defendant next observed dust and smoke, and his car passed through the accident scene. Defendant denies racing with Retzlaff.

Robert Beguin, a passenger in defendant's car, stated that when Retzlaff passed defendant's car, Retzlaff continued on to

pass other cars, and before Retzlaff pulled back into the right-hand lane, defendant also pulled out and passed the same cars that Retzlaff had just passed. Beguin estimated defendant's speed at approximately 70 to 75 miles per hour when defendant passed the cars. Beguin denied that defendant and Retzlaff were ever driving down the highway side by side at any time other than when Retzlaff originally passed defendant and denied that defendant and Retzlaff were racing. Beguin further testified that it was common knowledge around school that defendant would race his car at times.

Joyce Reed testified that two cars passed her on the highway as she was going about 45 to 50 miles per hour. She did not know how fast the two cars were traveling, but they were "going very fast" and passed her in quick succession. She stated that defendant's car, which she recognized, passed her first, then the other car, which she later found to be the Retzlaff car, came up beside defendant's car so they were side by side. She noticed that the cars continued side by side down the highway until they disappeared in that formation as they traveled over a "knoll" in the highway. Reed estimated that she observed the cars traveling side by side for 30 seconds to 1 minute. In her opinion the cars were racing because they remained side by side for such a long time and because they were going at such a high rate of speed. Reed testified that about 30 seconds after the two cars' taillights disappeared over the "knoll" she saw "lights swirling" and "dust in the air," indicating that something had happened. Reed then arrived on the accident scene.

Curtiss Smith and his passenger son, James Smith, filed identical affidavits in which they stated that at about 10:30 p.m. on September 7, 1984, they were driving west on Highway 20 when they were passed by two cars which were about three car lengths apart and which were traveling at a high rate of speed.

Gurney Pittenger, a Nebraska State Patrol officer, testified as an expert in auto accident reconstruction. Pittenger testified that in his opinion, at the time Retzlaff's car lost control, about 300 feet from the accident scene, it was traveling 111.45 miles per hour. Pittenger's opinion as to why Retzlaff's car lost control was essentially that because of his speed Retzlaff overdrove his headlights and did not see the curve coming up.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987). The burden is on the moving party to show that no issues of material fact exist, and unless the party can conclusively do so, the motion must be overruled. *Schrodt v. Sullivan Transfer & Storage Co.*, 222 Neb. 347, 383 N.W.2d 767 (1986). Upon motion for summary judgment the court examines the evidence, not to decide any issues of fact, but to discover if any real issue of fact exists. *Green v. Village of Terrytown*, 189 Neb. 615, 204 N.W.2d 152 (1973).

Racing is defined in Neb. Rev. Stat. § 39-602(73) (Reissue 1984) as follows: "Racing shall mean the use of one or more vehicles in an attempt to outgain, outdistance, or prevent another vehicle from passing, to arrive at a given destination ahead of another vehicle or vehicles, or to test the physical stamina or endurance of drivers over long-distance driving routes."

Neb. Rev. Stat. § 39-668 (Reissue 1984) bans racing on highways:

No person shall drive any vehicle on any highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition, contest, test, or exhibition.

As stated in 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 799 (1980):

Racing between two motorists on a public highway constitutes negligence which will render them liable for injuries proximately resulting to others therefrom. Both motorists may be held liable under the rule that where two or more tortfeasors by concurrent acts of negligence which, although disconnected, yet, in combination, inflict

injury, all are liable.

This rule was enunciated by the Nebraska Supreme Court as early as 1921. "Where a person is injured by the racing of two or more other parties on a public highway, all engaged in the race are liable, although only one of the vehicles came in contact with the injured person or the vehicle in which he is riding." *Thomas v. Rasmussen*, 106 Neb. 442, 444-45, 184 N.W. 104, 105 (1921). See, also, *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956). Further, it appears to be the law in all jurisdictions which have directly addressed this issue. See Annot., 13 A.L.R.3d 431 (1967).

A review of the evidence in this case reveals a genuine issue of material facts. The testimony regarding excessive speed, the manner in which other cars were passed, the side-by-side driving of the two cars, that defendant and Retzlaff had raced before, and that defendant had previously raced his car with others presented evidence which, if believed by the finder of facts, could justify an inference that defendant and Retzlaff were engaged in a race and that such a race was the proximate or a proximately contributing cause of the accident.

Accordingly, the judgment is reversed and the cause remanded for trial.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.