BERT A. SCHRINER, APPELLANT, V. MEGINNIS FORD COMPANY, APPELLEE.

421 N.W.2d 755

Filed April 1, 1988.    No. 86-242.

Timothy D. Loudon of Tate and Alden Law Firm, P.C., for appellant.

Richard P. Garden, Jr., of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiff-appellant, Bert A. Schriner, alleges he was wrongfully discharged from his employment with defendant-appellee, Meginnis Ford Company. The district court sustained Meginnis Ford's motion for summary judgment and dismissed Schriner's action. Schriner assigns as error the district court's failure to recognize a public policy exception to the terminable-at-will rule. We affirm.

Since this matter arises from the entry of a summary judgment, we are obligated to view the evidence in the light most favorable to Schriner and to give him the benefit of all reasonable inferences which may be drawn therefrom. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). See, also, *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987).

So viewed, the affidavits submitted in evidence in connection with the motion establish that on February 19, 1979, Meginnis Ford hired Schriner as a body shop mechanic for an indefinite term and agreed to pay him a specified hourly rate. On July 22, 1980, Schriner purchased a used vehicle from his employer. As a part of that transaction, he was provided an odometer mileage

statement which recited that, to the best of Meginnis Ford's knowledge, the actual mileage of the vehicle was 48,282.

In March 1985, while Schriner was still employed by Meginnis Ford, the vehicle developed severe engine damage while being driven on a trip to York and back to Lincoln. At this time the odometer read approximately 70,000 miles. The mechanic who worked on the vehicle stated to Schriner that it was "virtually impossible" for a vehicle with such low mileage to have sustained such severe damage; severe enough that it could not be repaired. The mechanic also suggested to Schriner that the odometer must have been rolled back prior to his purchase of the vehicle.

Schriner then went to the Lancaster County clerk's office, where he was "mistakenly" informed the records indicated that the vehicle had over 100,000 miles when it was purchased by him. That statement reinforced Schriner's suspicion that Meginnis Ford had fraudulently represented the mileage of the vehicle.

Subsequently, on March 22, 1985, Schriner contacted the Nebraska Attorney General's office concerning the possible violation of state odometer laws. Schriner did not first inform Meginnis Ford of the suspected violation because he mistrusted his employer as the result of prior disputes concerning the vehicle and certain of Schriner's work records. On March 25, 1985, a member of the Attorney General's office visited Meginnis Ford and investigated the transaction in question. Schriner was later informed that the Attorney General's office found the evidence insufficient to establish odometer fraud in connection with Schriner's vehicle.

On March 27, 1985, James Campbell, an owner of Meginnis Ford, went to the body shop with files in hand and yelling at Schriner. Schriner, Campbell, and Schriner's supervisor, Paul Becker, then went into Becker's office, where Campbell asked Schriner why he went to the Attorney General's office. The meeting resulted in the termination of Schriner's employment because Meginnis Ford "could not 'have this sort of stuff going on around here.' " Campbell later offered to give Schriner a good recommendation.

The general rule in this jurisdiction had been that if there were no contract for a fixed term of employment, the employer

could discharge, or the employee could leave employment, at his or her own pleasure. *Stewart v. North Side Produce Co.*, 197 Neb. 245, 248 N.W.2d 37 (1976) (citing *Ploog v. Roberts Dairy Co.*, 122 Neb. 540, 240 N.W. 764 (1932)). In *Mau v. Omaha Nat. Bank*, 207 Neb. 308, 316, 299 N.W.2d 147, 151 (1980), we recognized, however, that

> the "employment at will" rule is not, in some jurisdictions, an absolute bar to a claim of wrongful discharge. In a number of jurisdictions, an exception to the "terminable at will" rule has been articulated in recent years. Under this exception, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.

(Citations omitted.)

We also acknowledged that the terminable-at-will rule could be restricted by contract or statute. *Jeffers v. Bishop Clarkson Memorial Hosp.*, 222 Neb. 829, 387 N.W.2d 692 (1986); *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983); *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987); *Smith v. City of Omaha*, 220 Neb. 217, 369 N.W.2d 67 (1985); *Alford v. Life Savers, Inc.*, 210 Neb. 441, 315 N.W.2d 260 (1982). We further appreciated that while at-will governmental employees may be discharged for no reason at all, they may not be discharged on a basis which infringes upon constitutionally protected interests. *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986). See, also, *Devine v. Dept. of Public Institutions*, 211 Neb. 113, 317 N.W.2d 783 (1982); *Nebraska Dept. of Roads Emp. A. v. Department of Roads*, 364 F. Supp. 251 (D. Neb. 1973); *Patteson v. Johnson*, 721 F.2d 228 (8th Cir. 1983), *appeal after remand* 787 F.2d 1245 (8th Cir. 1986).

Most recently, in *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987), we declared that the provisions of the Nebraska Licensing of Truth and Deception Examiner's Act, Neb. Rev. Stat. §§ 81-1901 et seq. (Reissue 1987), prevented an employer from discharging an employee on the basis that he refused to submit to a truth and deception examination. Section 81-1932 of the act provides, among other things, that, with an exception not relevant to the facts in

*Ambroz*, no employer may require as a condition of continued employment that a person submit to a truth and deception examination. Section 81-1935 makes violation of the act a Class II misdemeanor, punishable by imprisonment for up to 6 months and a fine of up to $1,000. Neb. Rev. Stat. § 28-106 (Cum. Supp. 1986). Notwithstanding the lack of a provision in the act specifically creating a civil cause of action for one discharged because of a refusal to submit to a truth and deception examination, we determined that the act pronounced a public policy that such terminations of employment were not to take place with impunity. In reaching that decision we relied upon *Townsend v. L.W.M. Management, Inc.*, 64 Md. App. 55, 494 A.2d 239 (1985), and *Molush v. Orkin Exterminating Co., Inc.*, 547 F. Supp. 54 (E.D. Pa. 1982), for the proposition that such a result is permissible when a legislative enactment declares an important public policy with such clarity as to provide a basis for a civil action for wrongful discharge.

Meginnis Ford correctly points out that the case presently before us differs from that presented in *Ambroz*, in that *Ambroz* rests upon a statute which specifically prohibits an employer from requiring that as a condition of continued employment, an employee submit to a truth and deception examination, whereas in the present case there is no statute which prohibits an employer from discharging an employee who reports an employer's suspected criminal behavior to law enforcement officials.

Meginnis Ford also correctly notes that the case under consideration differs from those cases in which an action for wrongful discharge was based on an employee's refusal to participate in criminal conduct such as is found in *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn. 1987) (employee refused to dispense leaded gasoline into automobile designed to use unleaded gasoline); *Schmidt v. Yardney Electric Corporation*, 4 Conn. App. 69, 492 A.2d 512 (1985) (employee agreed to testify about participation in falsification of insurance claim, at least in part to redress fraud in which he had participated); *Sarratore v. Longview Van Corp.*, 666 F. Supp. 1257 (N.D. Ind. 1987) (employee refused to tamper with odometers); *Freidrichs v. Western Nat. Mut. Ins. Co.*, 410

N.W.2d 62 (Minn. App. 1987) (employee warned not to report substandard results of pressure tests he conducted on boilers); and similar cases.

Meginnis Ford cautions that to extend the *Ambroz* principle to the facts of this case is to invite commercial chaos. It directs our attention to, among other cases, *Adler v. American Standard Corp.*, 830 F.2d 1303 (4th Cir. 1987), in which the court observed, in the course of holding there was no claim where the employee had been discharged to prevent the disclosure to higher officers of his corporate employer the existence of commercial bribery and alteration of records, that limiting claims for wrongful discharge to situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutory duty, ties claims for wrongful discharge to a manageable and clear standard. (Similar concerns were also expressed by the dissenting judges in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981), the holding of which is discussed later in this opinion.) The *Adler* court further noted: "As a general prudential rule, legislatures have traditionally been reluctant to impose affirmative obligations on citizens to report or prevent crimes because defining what is a crime and to whose knowledge is a very difficult and intrusive inquiry. This reluctance imparts caution to this court." 830 F.2d at 1307.

Yet we cannot overlook that the Legislature of this state has declared it to be unlawful to engage in odometer fraud, Neb. Rev. Stat. §§ 60-2301 et seq. (Reissue 1984 & Cum. Supp. 1986), and has made such fraud a Class IV felony, § 60-2307 (Cum. Supp. 1986), punishable by imprisonment for up to 5 years and a fine of up to $10,000, Neb. Rev. Stat. § 28-105 (Reissue 1985). In applying a public policy exception to the termination-at-will rule, the Illinois Supreme Court, in *Palmateer v. International Harvester Co., supra,* observed that there is no public policy more basic than the enforcement of a state's criminal code. It therefore held that one claiming to have been discharged because he had informed law enforcement officers that an unnamed coemployee might be violating the criminal code in an unspecified manner, and had agreed to gather further evidence and to testify if a trial were held, stated

a cause of action.

The Supreme Court of Hawaii, in *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982), recognized that public policy can be difficult to define, but quoted with approval a definition which included in public policy those matters embodied in state statutes. In holding that public policy protected one presumably discharged because she gave truthful answers in an antitrust investigation, the *Parnar* court nonetheless cautioned:

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject. Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy.

*Id.* at 380, 652 P.2d at 631. We agree with that caveat and agree as well with the observation in *Adler, supra*, that courts must use care in creating new public policy and that " 'recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch.' " (Citations omitted.) *Adler* at 1306.

We are not, however, being asked here to declare public policy; the issue is whether, by virtue of the enactment of §§ 60-2301 et seq., there exists such a clear declaration by the Legislature of important public policy as to warrant a judicial determination that the policy is to be enforced by recognizing a cause of action for wrongful discharge under appropriate facts. We must conclude there does.

It must also be recognized, however, that accusing one of a crime is a very serious matter, serious enough that our law makes such a false accusation actionable as libel or slander per se. *Hutchens v. Kuker*, 168 Neb. 451, 96 N.W.2d 228 (1959).

See, also, *Treutler v. Meredith Corporation*, 455 F.2d 255 (8th Cir. 1972). Consequently, an action for wrongful discharge lies only when an at-will employee acts in good faith and upon reasonable cause in reporting his employer's suspected violation of the criminal code.

In this case Schriner had reasonable cause to believe that odometer fraud had been committed by someone, but not necessarily by Meginnis Ford. He knew that the vehicle was used; there is nothing in the evidence which suggests that Schriner saw anyone at Meginnis Ford change the odometer or that Schriner had reason to believe that Meginnis Ford routinely or otherwise engaged in such a practice. In the absence of such evidence, it cannot be said Schriner had reasonable cause to believe that Meginnis Ford had violated the odometer fraud statutes or that he acted in good faith in reporting such a suspected criminal act by his employer.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). This is such a case.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

HASTINGS, C.J., not participating.

WHITE, J., dissenting.

I agree with the majority's holding that a cause of action for wrongful discharge exists where an employee is terminated following a report of suspected criminal activity on the part of his or her employer. I cannot agree, however, with the conclusion that the employee in this case did not have reasonable cause to believe that his employer may have violated the odometer fraud statutes.

Given the conclusion reached by the majority on the facts of this case, I believe we may be creating an unavailing cause of action. The rigorous standard imposed upon employees to establish reasonable cause in these cases may well bury

meritorious claims forever.

The majority holds that an employee must present evidence suggesting that he or she witnessed an employer commit a crime *or* have reason to believe that the employer routinely *or otherwise* engaged in such criminal activity. The majority admits in this case that "Schriner had reasonable cause to believe that odometer fraud had been committed by *someone . . . .*" I believe that "someone" *includes* his employer. If Schriner had reasonable cause to believe someone rolled back his car's odometer, it cannot possibly be unreasonable to infer that the business from which he purchased the vehicle may have been the culprit. Schriner then had reason to believe that his employer, the seller in this circumstance, had *"otherwise engaged in"* odometer fraud, even without evidence that such was a routine practice or without actually witnessing the act.

This court, in this opinion, is asking employees who suspect employers of criminal activity for a level of certainty above that required for law enforcement agencies to obtain search warrants to enter our homes. In issuing search warrants authorities deal in probabilities, not certainties. We have held that only the probability, and not a prima facie showing, of criminal activity is the standard for determining probable cause. *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987).

I wholeheartedly agree with the majority that "accusing one of a crime is a very serious matter . . . ." That is precisely why causes of action such as libel, slander per se, and malicious prosecution exist. Such laws serve as a deterrent for false accusations and vengeful and frivolous legal actions.

Given that this court has recognized a cause of action in this case in favor of Schriner, a summary judgment is not proper in this case. Schriner had reasonable cause to believe that his employer, as the vehicle's former owner, may have changed the car's odometer. Further, the issue of whether Schriner acted in good faith is a question of fact for a trier of fact and is not properly disposed of by summary judgment. I would have reversed and remanded this cause for further proceedings.

GRANT, J., joins in this dissent.